223 N.J. Super. 435 (1988)
538 A.2d 1292
EDWARD CERRACCHIO, PLAINTIFF-APPELLANT,
v.
ALDEN LEEDS, INCORPORATED, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 21, 1988.
Decided March 7, 1988.
*436 Before Judges FURMAN, LONG and SCALERA.
Robert J. Sussman, attorney for appellant.
Boffa & Lytle, attorneys for respondent (Josephy Healy, on the brief).
The opinion of the court was delivered by LONG, J.A.D.
Plaintiff Edward Cerracchio here challenges a judgment dismissing the wrongful discharge complaint he filed against his former employer, defendant Alden Leeds, Incorporated. Plaintiff's complaint alleged that he was injured during the course of his employment with defendant when he inhaled chlorine gas, and that defendant subsequently discharged him because *437 "plaintiff made a workers' compensation claim and also reported to OSHA that the defendant was in violation." Plaintiff demanded compensatory and punitive damages, interest, costs of suit and counsel fees. Defendant's answer admitted plaintiff's injury and the Workers' Compensation claim, denied knowledge of the OSHA complaint and denied plaintiff's other allegations.
At trial, the following facts were established in plaintiff's case. Plaintiff was a maintenance mechanic at defendant's swimming pool chemicals company. On August 9, 1984, plaintiff was ordered to fix an electrical short which had caused a fire at the plant. The blowers which removed chemical powder and gasses from the air had been turned off. Upon responding to the area of the plant where the electrical short was located, plaintiff noticed an "extreme" chlorine smell. He left the area and obtained a gas mask. Masked, plaintiff fixed the electrical problem and reactivated the blowers. After performing these chores, plaintiff cleaned up a chemical spill that had occurred in the area. While working in the area of the chemical spill, plaintiff noticed a slight smell of chlorine gas even though he was wearing a gas mask. Plaintiff remained in this area for approximately 35 or 40 minutes. Although he did not notice any immediate ill effects, he started to experience a slight scratchy throat and mild nausea after he finished the job. Upon removing the gas mask, plaintiff observed that its cannister had a 1979 expiration date. Plaintiff informed his supervisor, Mark Epstein, of his symptoms and was advised that these ill effects were normal for an individual who had inhaled chlorine. Epstein told plaintiff to go home, drink some milk, and go to bed.
Plaintiff left the plant at about 5 p.m. Upon arriving home, he felt nauseous; his throat was scratchy and he was having trouble breathing. He telephoned his doctor that evening and obtained a prescription for an inhaler, which did not improve his condition.
*438 Plaintiff's doctor notified the New Jersey Poison Control Center, and plaintiff received several telephone calls from the center during the course of the evening inquiring about his condition and the manner in which he had been exposed to chlorine. By the following morning, plaintiff's breathing difficulty had worsened. His wife telephoned defendant and informed one of its employees, Barbara Kruppa, that plaintiff would not be coming into work because he was experiencing chest pain as a result of his inhalation of chlorine gas and that he might have to be hospitalized.
Plaintiff was then admitted to Clara Maass Hospital, with a diagnosis of respiratory failure. He remained hospitalized from August 10 until August 15, 1984. While hospitalized, he experienced chest tightness, difficulty breathing and a scratchy throat. He was treated with oxygen and intravenous medication.
On August 13, 1984, while plaintiff was still hospitalized, his wife again telephoned defendant and advised Barbara Kruppa that plaintiff was hospitalized for chlorine gas poisoning and that he would be remaining in the hospital for the rest of the week. On this same date, plaintiff telephoned defendant and spoke with Mark Epstein. Plaintiff informed Epstein that he was hospitalized for chlorine poisoning and that he would not be returning to work that week. Plaintiff asked Epstein what procedure he should follow in order to have his hospital bills paid. Epstein replied that he was not sure, but that he would speak with the employee who handled defendant's insurance claims. Epstein told plaintiff to keep in touch and let him know when he would be able to resume work.
By letter dated August 13, 1984, defendant sent a report of plaintiff's accident to its workers' compensation insurance carrier, Wausau Insurance Company. The accident report indicated that plaintiff sustained an injury on August 9, 1984, from inhaling chlorine gas during the course of his employment, which resulted in his hospitalization and time lost from work.
*439 Plaintiff testified that he was contacted by defendant's workers' compensation insurance carrier and that this company paid all of his hospital bills. In addition, defendant's carrier paid plaintiff for the time that he missed from work up until the date that his doctor released him. Plaintiff acknowledged that he never personally filed a claim petition with the Division of Workers' Compensation.
While plaintiff was in the hospital, he was visited by representatives of the Poison Control Center who asked him questions and filled out a form. Plaintiff did not sign this questionnaire. The Poison Control Center representatives gave plaintiff the telephone number of OSHA (the agency enforcing the Occupational Safety and Health Act) and instructed him to report his accident to this organization. Plaintiff telephoned OSHA on August 15, 1984, and reported his injury. Plaintiff testified that he "filled out a paper" for OSHA, but that he did not know whether it was a formal complaint. Subsequently, defendant's plant was inspected by an OSHA representative. No charges were filed against defendant, nor were any recommendations made by OSHA.
Plaintiff was released from the hospital on Wednesday, August 15, 1984. His mother immediately drove him to work. Upon arriving at the plant, plaintiff spoke with his supervisors, Mark Epstein, and his brother, Larry Epstein. Plaintiff informed them that he had been discharged from the hospital, that he had to return to the doctor on Friday for a test, and that his doctor would tell him when he could return to work based on the results of this test. The Epsteins told plaintiff to keep them posted.
Plaintiff took the test as scheduled and obtained the results on Monday, August 20, 1984. His doctor instructed him to remain home from work for another week. Plaintiff telephoned the plant and relayed this information to Larry Epstein.
Plaintiff visited his doctor the following Friday, August 24, 1987, and obtained a release to return to work. He went to *440 defendant's plant that same afternoon and spoke with Larry Epstein. Epstein asked plaintiff "how [his] cases were going." When plaintiff inquired whether Epstein was referring to his insurance claim and the report which he had made to OSHA, Epstein smiled and "shook his head." Plaintiff told Epstein that he had made the insurance claim because he needed money for the time he missed from work and for his hospital bills. He further explained that he had been instructed to report the accident to OSHA while he was hospitalized. Epstein did not respond.
Plaintiff then informed Epstein that he had just been discharged by his doctor that day and that he would be returning to work on Monday. Epstein replied, "don't bother, you don't work here anymore." When plaintiff asked for an explanation, Epstein said that plaintiff had been terminated as of August 13, 1984, because plaintiff failed to inform defendant that he was not coming to work that day. Although plaintiff protested that he spoke with Mark Epstein by telephone that day, his explanation was ignored. Epstein handed plaintiff a warning record that was in his personnel file which indicated that he had been warned on June 11, August 8, and August 13, 1984, that his continued poor attendance would not be tolerated and that he was required to call the office every morning that he did not report for work. Plaintiff denied ever having received any of these warnings. Larry Epstein assisted plaintiff in removing his tool box from defendant's plant. As he was doing so, Epstein stated, "if you weren't such a troublemaker you would still have a job here."
Plaintiff returned to defendant's plant the following Monday to report for work, but was ordered out of the building. Plaintiff immediately started looking for a job and began working for another pool company the following week.
At the conclusion of the foregoing evidence which was introduced during plaintiff's case, defendant moved for the entry of a judgment of involuntary dismissal on the ground that plaintiff *441 failed to set forth a prima facie case of a retaliatory discharge. The trial judge agreed. He found that plaintiff failed to sustain the burden of proving a prima facie case of a retaliatory discharge based on his having made a claim for workers' compensation benefits. The judge reasoned that it was not plaintiff but defendant which took the initiative of notifying its workers' compensation carrier of plaintiff's employment-related injury resulting in the payment of benefits. In addition, the judge found that the Secretary of Labor had the exclusive right to bring a retaliatory discharge action pursuant to OSHA. A judgment was entered in defendant's favor and this appeal followed. We reverse.
We turn first to plaintiff's workers' compensation claim. There is no question but that an employee may maintain an action for wrongful discharge in violation of a clear mandate of public policy. Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 65-66 (1980). In Pierce, the Supreme Court recognized that an employee has a cause of action upon discharge in retaliation for filing a workers' compensation claim, although the workers' compensation statute specifically authorizes only an administrative remedy and does not provide such a cause of action at law. 84 N.J. at 68. Pertinent provisions of the New Jersey Workers' Compensation Act specifically address this subject:

It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer, or because he has testified, or is about to testify, in any proceeding under the chapter to which this act is a supplement. For any violation of this act, the employer or agent shall be punished by a fine of not less than $100.00 nor more than $1,000.00 or imprisonment for not more than 60 days or both. Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination, [N.J.S.A. 34:15-39.1; emphasis added]
As an alternative to any other sanctions herein or otherwise provided by law, the Commissioner of Labor and Industry may impose a penalty not exceeding $1,000.00 for any violation of this act. He may proceed in a summary manner for the recovery of such penalty, for the use of the State in any court of competent jurisdiction. [N.J.S.A. 34:15-39.2]

*442 The employer alone and not his insurance carrier shall be liable for any penalty under this act. [N.J.S.A. 34:15-39.3]
In Lally v. Copygraphics, 173 N.J. Super. 162 (App.Div. 1980), aff'd 85 N.J. 668 (1981), we held that although N.J.S.A. 34:15-39.1 provides an unlawfully discharged employee with an administrative remedy, the availability of such a remedy does not exclude an employee's right to bring a judicially cognizable cause of action on public policy grounds for compensatory and punitive damages against his or her employer. In affirming, the Supreme Court observed:
In particular we endorse the conclusion of the Appellate Division that there exists a common law cause of action for civil redress for a retaliatory firing that is specifically declared unlawful under N.J.S.A. 34:15-39.1 and 39.2. The statutory declaration of the illegality of such a discharge underscores its wrongful and tortious character for which redress should be available. Such a cause of action is strongly founded in public policy which, in this case, is reflected in the statutory prohibitions themselves. [Citation omitted]. Moreover, the penal and administrative remedies that are provided by N.J.S.A. 34:15-39.1 and 39.2 to rectify this form of illegal employment practice will clearly be augmented by recognition of an alternative or supplemental judicial right to secure civil redress. A common law action for wrongful discharge in this context will effectuate statutory objectives and complement the legislative and administrative policies which undergird the workers' compensation laws. The determination of the Appellate Division that the statutory treatment of this kind of retaliatory firing is not preemptive of a civil right of redress is sound. [Citation omitted].
* * * * * * * *
If the Legislature had wanted to foreclose a judicial cause of action, it would have done so expressly. [Citation omitted].
[85 N.J. at 670-671]
The only question therefore is whether plaintiff here established prima facie that he was discharged for exercising his rights under the workers' compensation statutes. In so doing, plaintiff was not required to show that he physically filed a claim petition. Rather, as observed in Galante v. Sandoz, Inc., 192 N.J. Super. 403, 407 (Law Div. 1983), aff'd 196 N.J. Super. 568 (App.Div. 1984), "[t]o make a prima facie case for a retaliatory discharge the employee must prove: (1) that he made or attempted to make a claim for workers' compensation; and (2) that he was discharged in retaliation for *443 making that claim." Here plaintiff set into motion the filing of a workers' compensation claim by notifying his employer of his injury and inquiring as to the procedure to be followed to have his hospital bills paid. Indeed, the same day that he called, a report of the accident was made to the workers' compensation insurance carrier by defendant. Clearly, plaintiff's actions constituted a claim or attempt to make a claim for workers' compensation benefits within the meaning of N.J.S.A. 34:15-39.1.
What remained for the trial judge then was a R. 4:37-2(b) analysis of the retaliation issue. R. 4:37-2(b) provides that a motion for an involuntary dismissal made at the close of the presentation of plaintiff's case "shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." Thus, if accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. The trial judge is not concerned with the worth, nature or extent of the evidence, but only with its existence, viewed most favorably to the party opposing the motion. Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969). It is here that the trial judge went wrong. Plaintiff's evidence as to how the Epsteins treated him after his accident, including the reference to his "cases" and the statement that he would still be working if he was not a "troublemaker," along with legitimate inferences, could sustain a judgment that he was fired for filing the workers' compensation claim. Thus, the motion should have been denied. If the trial judge had heeded the instruction of R. 4:37-2(b), he would have done so. Instead, he weighed the evidence as a trier of fact without according favorable inferences to plaintiff. Indeed, even his weighing was flawed. The fact that defendant processed plaintiff's workers' compensation claim was not dispositive of this issue. Because defendant may have recognized the inevitability of such filing does not mean that it did not *444 later retaliate against plaintiff. This is not to say whether or not defendant did so, only that plaintiff survived defendant's motion for involuntary dismissal. We thus reverse the judgment dismissing plaintiff's complaint for retaliatory discharge based on the filing of a workers' compensation claim.
As to plaintiff's OSHA claim, the trial judge dismissed plaintiff's suit because he viewed the OSHA statute as providing the exclusive remedy for retaliatory discharge for the filing of an OSHA complaint. 29 U.S.C. § 660 (c) prescribes:
(1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this Act.
(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

(3) Within 90 days of the receipt of a complaint filed under this subsection the Secretary shall notify the complainant of his determination under paragraph (2) of this subsection. [Emphasis added].
It is clear that this statute does not "create" a private right of action for an employee who is discharged for reporting a safety violation. Taylor v. Brighton Corp., 616 F.2d 256 (6th Cir.1980). The question however, is whether it prohibits such an action. On its face, no such prohibition exists in the statute, and it seems to us that the statute does not preclude an employee from instituting an action in New Jersey, under a recognized tort or contract theory. A similar conclusion was reached in Kennard v. Louis Zimmer Communications, Inc., 632 F. Supp. 635 (E.D.Pa. 1986), where the court allowed a *445 discharged employee to bring a retaliatory discharge suit in federal court based on the Pennsylvania public policy tort exception to the employment-at-will doctrine where the employee alleged that her termination was in retaliation for having lodged a complaint with OSHA regarding work and health conditions. Although the court recognized that the prevailing authority is that no private right of action for an unlawful discharge exists under 29 U.S.C. § 660(c), it observed that the employee was not alleging a private right of action pursuant to this section, but rather, was seeking to recover damages for wrongful discharge under a tort theory. 632 F. Supp. at 637 n. 1. But see King v. Fox Grocery Co., 642 F. Supp. 288 (W.D.Pa. 1986); Braun v. Kelsey-Hayes Co., 635 F. Supp. 75 (E.D.Pa. 1986); Walsh v. Consolidated Freightways, Inc., 278 Or. 347, 563 P.2d 1205 (Sup.Ct. 1977).
That is the situation here as well. Plaintiff is not asserting a claim under 29 U.S.C. 660, and indeed could not because that statute preempts such a filing except by the Secretary of Labor. On the contrary, plaintiff has filed a tort action to recover damages based upon his discharge in violation of the public policy of this State. See Velantzas v. Colgate-Palmolive Company, Inc., Etc., 109 N.J. 189, 191-192 (1988). This is a Pierce claim which is entirely separate from the assertion of a claim under OSHA. It is clear to us that there is a strong public policy in New Jersey favoring safety in the workplace. As Pierce directs, we have gleaned this policy from legislation, more particularly N.J.S.A. 34:6A-3 which provides:
Every employer shall furnish a place of employment which shall be reasonably safe and healthful for employees. Every employer shall install, maintain and use such employee protective devices and safeguards including methods of sanitation and hygiene and where a substantial risk of physical injury is inherent in the nature of a specific work operation shall also with respect to such work operation establish and enforce such work methods, as are reasonably necessary to protect the life, health and safety of employees, with due regard for the nature of the work required. L. 1965 c. 154 § 3.
*446 See also Shimp v. New Jersey Bell Telephone Co., 145 N.J. Super. 516 (Ch. Div. 1976). In addition, the Legislature's extension of OSHA to public sector employees excluded under the federal act, is, to us, a further enunciation of this policy. See N.J.S.A. 34:6A-25 et seq. In our view, the reporting of unsafe conditions in the workplace by an employee is action in furtherance of this firmly held policy. Concomitantly, retaliation against the reporting employee as a punitive measure and as a deterrent to other observers of unsafe conditions, directly affronts our policy in favor of safety. Thus, we hold that under Pierce, an employee in New Jersey may maintain a private action in tort or contract for retaliatory discharge as a result of the filing of an OSHA complaint because such discharge contravenes our public policy. We reverse the trial judge's holding to the contrary. The complaint is reinstated, and the case is remanded for trial in accordance with this opinion.