[No. B028623. Second Dist., Div. Three. Sept. 28, 1989.]

VIRGINIA JENKINS, Plaintiff and Appellant, v.
FAMILY HEALTH PROGRAM et al., Defendants and Respondents.

442

## COUNSEL

Carman & Mansfield and E. Day Carman for Plaintiff and Appellant.

O'Flaherty, Prestholt & Bennington, Belgum, Wulfsberg, Bergum & Weber, J. Christopher Bennington and Lee Belgum for Defendants and Respondents.

## OPINION

**DANIELSON, Acting P. J.**—Plaintiff and appellant Virginia Jenkins appeals from an order of dismissal entered after the trial court sustained without leave to amend the demurrer of defendant and respondent Family Health Program to the first four causes of action set forth in her first amended complaint for damages based on termination of her employment, and plaintiff voluntarily dismissed her fifth and final cause of action.

### FACTS

In her first cause of action for breach of contract, plaintiff alleged that on or about December 24, 1978, she and defendant entered into an oral contract for her employment by defendant as nurse practitioner "on a career basis until retirement age" for $32,000 per year, plus retirement, medical, vacation and other employment benefits. According to plaintiff, defendant represented that her employment would not be terminated "except for good, just, and legitimate cause or . . . reason." Despite her performance of all obligations of her employment, she was suddenly and without warning terminated on or about February 23, 1984.

Plaintiff's second cause of action was for intentional infliction of emotional distress; her third cause of action was for breach of the covenant of good

faith and fair dealing; her fourth cause of action was for wrongful termination of employment, and alleged she was terminated in retaliation for her conduct in complaining to defendants about substandard conditions at defendant's health care facility; her fifth and final cause of action was for libel and defamation. She sought both compensatory and punitive damages.

Defendant demurred to the first amended complaint on the ground that it failed to state facts sufficient to constitute a cause of action against defendant (Code Civ. Proc., § 430.10, subd. (e)), and also moved to strike portions of the pleading. Plaintiff filed opposition to the demurrer and motion to strike, and the matters were heard on June 27, 1985, following which the trial court sustained the demurrer to the first four causes of action without leave to amend, and overruled the demurrer to the fifth cause of action, from which the court struck a punitive damage allegation.

Plaintiff moved for reconsideration of the order sustaining the demurrer, essentially seeking leave to further amend. In support of the motion, she filed her declaration and that of her attorney relating a series of personal problems that had prevented her from adequately communicating with her attorney until mid-June 1985, when she delivered to him documents including "a retirement plan, a rehiring-full benefit agreement, an employment agreement, a compensation package and other documents relating to employment." In supplemental points and authorities, plaintiff requested that the trial court state its reasons for sustaining the demurrer. (Code Civ. Proc., § 472d.)

Defendant filed opposition to the motion for reconsideration, following which plaintiff filed a second supplemental memorandum of points and authorities and response to defendant's memorandum of points and authorities, again urging the court to grant her leave to further amend the complaint.

Following a hearing held on August 13, 1985, the trial court denied the motion for reconsideration, and set forth on the minutes its reasons for sustaining the demurrer without leave to amend.

Plaintiff dismissed the fifth cause of action after unsuccessfully seeking its severance from the first four causes of action. She filed her notice of appeal on June 24, 1987, although the order dismissing the action was not entered until June 30, 1987. We construe the document as a notice of appeal from the order of dismissal. (*Pulver* v. *Avco Financial Services* (1986) 182 Cal.App.3d 622, 630-631 [227 Cal.Rptr. 491].)

CONTENTIONS

Plaintiff contends, essentially that (1) the trial court erred in sustaining the demurrer, and (2) in any event, the court abused its discretion in denying her further leave to amend her pleading. Defendant controverts each of these contentions.

DISCUSSION

■ " 'The function of a demurrer is to test the sufficiency of plaintiffs' pleading by raising questions of law. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 796, pp. 2408-2409.)' (*Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 818 . . . .) ■ On appeal our only concern is whether appellant has succeeded in stating a cause of action. We are not concerned with appellant's possible difficulty or inability in proving the allegations of his complaint. (*Highlanders, Inc.* v. *Olsan* (1978) 77 Cal.App.3d 690, 697 . . . .) In assessing the sufficiency of the complaint against respondents' demurrer, we treat the demurrer as admitting all material facts properly pleaded, and 'we bear in mind our well established policy of liberality in reviewing a demurrer sustained without leave to amend: "the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties." ' (*Glaire* v. *LaLanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 . . . .)" (*Plumlee* v. *Poag* (1984) 150 Cal.App.3d 541, 545-546 [198 Cal.Rptr. 66].)

*Breach of Contract*

Citing *Newfield* v. *Insurance Co. of the West* (1984) 156 Cal.App.3d 440, 446 [203 Cal.Rptr. 9], the trial court ruled that plaintiff's first cause of action, for breach of contract, was barred by the statute of frauds. (Civ. Code, § 1624, subd. 1.)

At the time of the making of the contract in question, Civil Code section 1624 provided, in part: "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: [¶] 1. An agreement that by its terms is not to be performed within a year from the making thereof." (Now see Civ. Code, § 1624, subd. (a).)

In *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373], our Supreme Court disapproved of this aspect of *Newfield* and reaffirmed its decision in *White Lighting Co.* v. *Wolfson* (1968) 68 Cal.2d 336 [66 Cal.Rptr. 697, 438 P.2d 345], holding that this portion of the statute of frauds " 'applies only to those contracts which, by their terms,

cannot possibly be performed within one year.' (*Id.* at p. 343.)" (*Foley, supra,* 47 Cal.3d at p. 671.) The *Foley* court stated: "Even if the original oral agreement had expressly promised plaintiff 'permanent' employment terminable only on the condition of his subsequent poor performance or other good issue, such an agreement, if for no specific term, *could* possibly be completed within one year. (See *White Lighting, supra,* 68 Cal.2d at pp. 343-344.) Because the employee can quit or the employer can discharge for cause, even an agreement that strictly defines appropriate grounds for discharge can be completely performed within one year—or within one day, for that matter." (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at pp. 672-673, italics in original.)

■ Here, as in *Foley,* the contract "could have been performed within one year of its making; plaintiff could have terminated [her] employment within that period, or defendant could have discharged plaintiff for cause. Thus, the contract does not fall within the statute of frauds and the fact that it was an . . . oral agreement is not fatal to its enforcement." (*Foley, supra,* 47 Cal.3d at p. 675.)[1]

The trial court erred in sustaining the demurrer with respect to plaintiff's first cause of action for breach of contract.

*Breach of the Implied Covenant of Good Faith and Fair Dealing*

■ *Foley* criticized cases approving recovery in *tort* for breach of the implied covenant of good faith and fair dealing inherent in every employment contract (e.g., *Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250, 262 [215 Cal.Rptr. 860]; *Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1171 [226 Cal.Rptr. 820]; see also *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 179, fn. 12 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]), stating the employment relationship "is not sufficiently similar to that of insurer and insured to warrant judicial extension of the proposed additional tort remedies in view of the countervailing concerns about economic policy and stability, the traditional separation of tort and contract law, and finally, the numerous protections against improper terminations already afforded employees." (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 693.) However, *Foley* recognized the continued existence of a separate *contract* cause of action for breach of the implied cove-

---

[1] *Foley* also held Labor Code section 2922, providing that "[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other," creates only a "presumption [which] may be superseded by a contract, express or implied, limiting the employer's right to discharge the employee. [Citations.]" (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 665.)

nant. (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 976 [258 Cal.Rptr. 592, 772 P.2d 1059].)

In her third cause of action, plaintiff alleged the express oral agreement, her compliance therewith, and that on February 28, 1984, defendants suddenly and without warning demanded that she sign a letter of resignation, stating that if she refused, she would be fired and it would be very difficult for her to obtain employment elsewhere. Plaintiff alleged defendants wrongfully terminated her employment "without good, just, or legitimate cause or reason," and "in conscious and reckless disregard" of her rights, for the purpose of depriving her of the benefits of her employment contract. These allegations are sufficient to establish a cause of action for breach of the implied covenant. (*Khanna* v. *Microdata Corp., supra,* 170 Cal.App.3d 250, 262.)

The trial court erred in sustaining the demurrer to plaintiff's third cause of action. However, the punitive damage allegations must be stricken therefrom.

*Wrongful Termination*

In her fourth cause of action plaintiff alleged: "Termination by Defendants of the Plaintiff's employment was wrongful and in violation of the fundamental principles of public policy of the State of California as referred to in its laws and as set forth in Labor Code[2] Section 1350 et seq., and the objectives underlying said policy and law in that said termination was for the purpose of punishing Plaintiff for and in retaliation against Plaintiff's conduct in complaining to Defendants that conditions at [Family Health Program] were in many cases substandard and required modification so as to make such conditions fair and safe for both the employees and patients."

In *Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d 167 (criticized on another point in *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654, 687), our Supreme Court stated: "In a series of cases arising out of a variety of factual settings in which a discharge clearly violated an express statutory objective or undermined a firmly established principle of public policy, courts have recognized that an employer's traditional broad authority to discharge an at-will employee 'may be limited by statutes . . . or by considerations of public policy.' [Citations.]" (*Id.* at p. 172.) In *Tameny,* the court held that an employee allegedly terminated for refusing to commit a criminal act, i.e., participate in an illegal price-fixing scheme, could maintain a tort action for wrongful discharge against the employer. (*Id.* at p. 178.)

---

[2] All further statutory references are to the Labor Code unless otherwise indicated.

■ In the present case, the trial court sustained the demurrer to plaintiff's fourth cause of action in the belief there was no public policy to violate, as the Legislature had repealed sections 1350 through 1357 in 1984. (Stats. 1984, ch. 778, § 1.) Plaintiff points out these sections were nonetheless still in effect at the time of her termination in February 1984. Citing *Homemakers, Inc., of L. A.* v. *Division of Indus. Welf.* (9th Cir. 1974) 509 F.2d 20, and *Rosenfeld* v. *Southern Pacific Company* (9th Cir. 1971) 444 F.2d 1219, defendant claims the sections were long since declared unenforceable, in that they were in conflict with title VII of the federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). (See *Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690, 700 [166 Cal.Rptr. 331, 613 P.2d 579].)

"The safety of employees in the work place has long been a matter of prime legislative concern. Labor Code section 6400 provides: 'Every employer shall furnish employment and a place of employment which are safe and healthful for the employees therein.' Section 6401 provides: 'Every employer . . . shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees.' Section 6402 provides: 'No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe and healthful.' Section 6403 provides in part: 'No employer shall fail or neglect . . . [¶] (c) To do every other thing reasonably necessary to protect the life, safety, and health of employees.' And Section 6404 provides: 'No employer shall occupy or maintain any place of employment that is not safe and healthful.' " (*Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290, 297-298 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015].)

The *Hentzel* court stated: "It requires little analysis to perceive that the legislative purpose underlying these provisions would be substantially undermined if employers were permitted to discharge employees simply for protesting working conditions which they reasonably believe constitute a hazard to their own health or safety, or the health or safety of others. Achievement of the statutory objective—a safe and healthy working environment for all employees—requires that employees be free to call their employer's attention to such conditions, so that the employer can be made aware of their existence, and given opportunity to correct them if correction is needed. The public policy thus implicated extends beyond the question of fairness to the particular employee; it concerns protection of employees against retaliatory dismissal for conduct which, in light of the statutes, deserves to be encouraged, rather than inhibited." (*Hentzel* v. *Singer Co., supra,* 138 Cal.App.3d at p. 298.)

The Legislature has provided for the protection of employees who engage in certain activities relating to safety and health matters "by prohibiting discharge or discrimination because of such activity (§ 6310, subd. (a)), by declaring victims of discharge or discrimination to be entitled to reinstatement and reimbursement for lost wages and work benefits (§ 6310, subd. (b)), and by providing for the maintenance of suit by the Labor Commissioner on behalf of victims under certain circumstances (§ 6312)." (*Hentzel* v. *Singer Co., supra,* 138 Cal.App.3d at p. 298.) The *Hentzel* court determined the remedy under section 6312 is neither exclusive nor requisite to maintenance of a private cause of action. (*Hentzel* v. *Singer Co., supra,* 138 Cal.App.3d at pp. 302-303.) Thus, there is a private right of action for retaliatory discharge for protesting unsafe working conditions.

While the demurrer to plaintiff's fourth cause of action was properly sustained, it appears she may be able to amend her pleading to plead a proper cause of action for unlawful termination based on violation of public policy. The trial court erred in denying her leave to amend the fourth cause of action.

*Intentional Infliction of Emotional Distress*

■ Plaintiff's claim, set forth in her second cause of action, that she suffered humiliation, mental anguish, and emotional and physical distress as a result of her employment termination, is precluded by the "exclusive remedy" provision of the Workers' Compensation Act (§ 3201 et seq.). Section 3600 of the act, which states the conditions of compensation that must concur before an employer is liable for an employee's injury, includes the requirement that "at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment." (§ 3600, subd. (a)(2).) Where these conditions concur, "the right to recover such compensation is, [with certain exceptions not applicable here], the sole and exclusive remedy of the employee . . . against the employer. . . ." (§ 3602, subd. (a).)

In *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743], our Supreme Court held that, "when the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability." (*Id.* at p. 160.)

"Termination necessarily arises out of the employment relationship since it is the event that ends that relationship." (*Giorgi* v. *Verdugo Hills Hospital* ▮ (Cal.App.).) And "termination is no less a normal risk of employment because it is alleged to be wrongful." (*Giorgi* ▮ (Cal.App.).) Therefore, "[i]njury to an employee resulting from a termination—whether characterized as in bad faith or not—is an inherent risk of employment." (*Giorgi* ▮ (Cal.App.).) When an employee claims injuries as a result of termination of his or her employment, those injuries also necessarily occur "in the course of" the employment. (*Giorgi* ▮ (Cal.App.).)

The demurrer to plaintiff's second cause of action, for intentional infliction of emotional distress, was properly sustained without leave to amend.

## DECISION

The order of dismissal is affirmed as to the second cause of action. The order is reversed as to the first, third, and fourth causes of action, and the matter is remanded to the trial court for further proceedings consistent with the views expressed herein. Appellant to receive costs on appeal.

Arabian, J., and Croskey, J., concurred.