No. 80,408

DAVID FLENKER, *Appellant*, v. WILLAMETTE INDUSTRIES, INC., *Appellee.*

(967 P.2d 295)

Opinion filed November 6, 1998.

*Stephen J. Dennis*, of Overland Park, argued the cause and was on the brief for appellant.

*Rody P. Biggert*, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, Illinois, argued the cause, and *John L. Vratil*, of Lathrop & Gage, L.L.C., of Overland Park, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: The United States Court of Appeals for the Tenth Circuit has certified the following question to this court under K.S.A. 60-3201:

"Does the remedy provided by OSHA § 11(c) [29 U.S.C. § 660(c) (1994)] for employees who allege that they have been discharged in retaliation for filing complaints under that statute preclude the filing of a Kansas common law wrongful discharge claim under Kansas's public policy exception to at-will employment?"

The answer is, "no."

This case arises out of the March 11, 1994, firing of David Flenker, a worker at Willamette Industries, Inc.'s (Willamette) corrugated paper manufacturing plant. Willamette's basis for firing Flenker was that he failed to comply with the terms of the rehabilitation agreement he had signed under Willamette's alcohol and drug use policy. Flenker contends that he was fired because he

reported unsafe working conditions to Willamette and the Occupational Safety and Health Administration (OSHA).

Our analysis of the certified question is advanced by posing and answering two secondary questions.

1. Does the rule in *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 812-13, 752 P.2d 645 (1988), extend to situations other than the collective bargaining agreement context? The answer is "yes."

2. If *Coleman* extends beyond the collective bargaining context, is the remedy in OSHA § 11(c) "adequate"? The answer is "no."

## FACTS

The Tenth Circuit Certification Order informs us that:

"Mr. Flenker worked as a Class C mechanic for Willamette, a corrugated paper manufacturer. After a dispute with his temporary supervisor concerning the safety of a piece of machinery known as a corrugated downstacker device, Mr. Flenker made it known at the plant that he intended to file a complaint with OSHA regarding the machinery.

"Mr. Flenker received a disciplinary warning as a result of the dispute with his temporary supervisor. The next day, Mr. Flenker received a three-day suspension from his supervisor for his improper installation of gauges and for the improper repair of sprockets on the bandler line.

"Mr. Flenker later filed his OSHA complaint, alleging violations concerning the safety of the corrugated downstacker and other matters. OSHA subsequently made a surprise investigation of the Willamette plant. Although the downstacker met OSHA safety standards, OSHA found that several of Mr. Flenker's other complaints were valid.

"About a month later, plant manager Dale McGinnis terminated Mr. Flenker's employment, contending Mr. Flenker failed to obey the terms of a Rehabilitation Agreement he had signed under Willamette's Alcohol and Drug Use Policy. Mr. Flenker claims he was fired because he reported unsafe working conditions to Willamette and to OSHA.

"Shortly after his termination, Mr. Flenker filed a section 11(c) retaliatory discharge complaint with OSHA, which he later withdrew. Mr. Flenker was informed, presumably by an OSHA employee, that because he had fixed the machine in question, which had been a part of his section 11(c) claim, he no longer had a claim under OSHA. In September 1995, he filed this action in state court. Willamette removed the action to federal court pursuant to 28 U.S.C. § 1446(b).

"Mr. Flenker claims that he was discharged because he exercised his statutory right to report unsafe working conditions to his employer. He seeks compensatory damages for lost wages and benefits and emotional pain and suffering."

Flenker chose to litigate his claims in state court; however, Willamette removed the lawsuit to federal court.

## DISCUSSION

We restate the certified question:

Does the remedy provided by OSHA § 11(c) for employees who allege that they have been discharged in retaliation for filing complaints under that statute preclude the filing of a Kansas common law wrongful discharge claim under Kansas' public policy exception to at-will employment?

### At-Will Employment and Exceptions

At-will employment is the general rule in Kansas. We said in *Johnston v. Farmers Alliance Mutual Ins. Co.*, 218 Kan 543, 546, 545 P.2d 312 (1976): "[I]n the absence of a contract, expressed or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party."

We have recognized public policy exceptions to the at-will employment doctrine. For a review of the Kansas case law, see Worth and Landis, *Fire at Will? The Status of Judicially Created Exceptions to Employment-at-Will in Kansas,* 64 J.K.B.A. 22 (1995). The so-called whistle-blower's exception was first announced in *Palmer v. Brown,* 242 Kan. 893, 752 P.2d 685 (1988). Termination, in retaliation for the good faith reporting of a co-worker's or employer's serious infraction of rules, regulations, or law pertaining to public health, safety, and the general welfare, is an actionable tort. 242 Kan. at 900. *Palmer* involved an employee's reporting of allegedly improper medicaid billing practices to "unspecified authorities." 242 Kan. at 894.

Willamette argues that Flenker has no independent state law tort claim, relying on *Polson v. Davis,* 895 F.2d 705 (10th Cir. 1990). Federal courts in Kansas have followed *Polson's* interpretation of Kansas law (exceptions to the at-will employment doctrine should be limited to situations where there is no adequate alternative remedy), *e.g., Conner v. Schnuck Markets, Inc.,* 906 F. Supp. 606, 614 (D. Kan. 1995).

*Polson* observed that Kansas federal district courts were split on whether the public policy exception should be extended to cover conduct protected under a statutory scheme, specifically, the Kansas Act Against Discrimination (KAAD), K.S.A. 44-1001 *et seq*. 895 F.2d at 709. *Wynn v. Boeing Military Airplane Co.*, 595 F. Supp. 727 (D. Kan. 1984), held that the public policy exception permitting an independent cause of action should apply in cases in which a worker's termination is alleged to stem from conduct proscribed by KAAD. Judge Theis in *Wynn* reasoned that the fact that the various remedies might *differ* is sufficient to require recognition of a state common-law remedy. 895 F.2d at 709.

In contrast, Judge Rogers in *Tarr v. Riberglass, Inc.*, No. 83-4234, 1984 WL 1481 (D. Kan. February 3, 1984), and Judge O'Connor in the lower *Polson* decision, 635 F. Supp. 1130 (D. Kan. 1986), and *Robinson v. Colt Indus. Operating Corp.*, No. 84-2471 (unpublished D. Kan. March 5, 1986), held that the availability of remedies under KAAD precludes expanding the remedies available at common law. 895 F.2d at 709.

*Polson* chose to follow the preclusive approach, discerning in *Coleman v. Safeway Stores, Inc.*, 242 Kan. at 813-14, a reliance on "inadequacy of arbitration to compensate employees for torts committed by employers." 845 F.2d at 709. *Polson* concluded: "It appears that we must investigate the adequacy of the alternative remedy before classifying a situation as being under the public policy exception to the employment-at-will doctrine." 895 F.2d at 709. *Polson* reasoned that this court would adopt the view that KAAD provides an adequate and exclusive state remedy for violations of the public policy at issue. 895 F.2d at 709. We note, however, that *Polson* seems to employ a strict view of "adequate," finding there is no evidence that the remedies provided for in KAAD were "constitutionally inadequate to compensate plaintiff," or "so inadequate to enforce the stated public policy as to require bolstering by a common law cause of action." 895 F.2d at 709-10.

## Coleman v. Safeway Stores

Our discussion of *Polson* necessarily leads to a review of *Coleman. Coleman* is important here because our answer to the certi-

fied question is based on our precedent, not on federal rulings interpreting Kansas law.

*Coleman* overruled *Cox v. United Technologies*, 240 Kan. 95, 727 P.2d 456 (1986), *Smith v. United Technologies*, 240 Kan. 562, 731 P.2d 871 (1987), and *Armstrong v. Goldblatt Tool Co.*, 242 Kan. 164, 747 P.2d 119 (1987). The overruled cases involved the interrelationship of Kansas tort law and the law of labor union contracts. In each of the three overruled cases: (1) a discharged employee was covered by a collective bargaining agreement, (2) the agreement prohibited the employee's discharge except for just cause, and (3) the employee was held not to have a cause of action in tort for wrongful discharge. *Coleman* reasoned that a retaliatory discharge action for filing a workers compensation claim is based on a violation of state public policy independent of a collective bargaining agreement. 242 Kan. 804, Syl. ¶ 1. *Coleman* also concluded that the arbitration procedures provided for in the collective bargaining agreement were a "limited remedy," and might not result in the employee's right being "adequately protected." 242 Kan. at 813-14.

## Preemption and Alternate Remedies Preclusion

Preemption is not an issue here. Willamette does not contend that OSHA preempts state common-law retaliation claims. The Tenth Circuit in a footnote to its certification order says "Congress did not intend for OSHA § 11(c) to occupy this field of law, nor does OSHA conflict with state law, thereby preempting it. See, *Schweiss v. Chrysler Motors Corp.*, 922 F.2d 473, 475-76 (8th Cir. 1990)." Preemption is an application of law concept in which federal law must be applied to the exclusion of state law for uniformity of interpretation. *English v. General Electric Co.*, 496 U.S. 72, 110 L. Ed. 2d 65, 110 S. Ct. 2270 (1990); see also Annot., Federal Pre-Emption of Whistleblower's State-Law Action For Wrongful Retaliation, 99 A.L.R. Fed. 775, 810.

The alternative remedies doctrine at issue here, referenced sometimes as preclusion, is a substitution of law concept. Under the alternative remedies doctrine, a state or federal statute would be substituted for a state retaliation claim if the substituted statute

provides an adequate alternative remedy. *Bair v. Peck*, 248 Kan. 824, 838, 811 P.2d 1176 (1991). *Masters v. Daniel, Intern. Corp.*, 917 F.2d 455, 457 (10th Cir. 1990), relied on *Polson*. The question to ask in resolving recognition of a state tort claim for retaliatory discharge is whether the statutory remedy is adequate and thus precludes the common-law remedy. 917 F.2d at 457 (held the Energy Reorganization Act, 42 U.S.C. § 5851 *et seq.* [1994], provided an adequate alternative remedy).

Willamette argues that "[t]he majority of other jurisdictions that have addressed the issue preclude common law retaliatory discharge claims when there is an adequate alternative state or federal remedy." The large number of cases Willamette cites is misleading. Most of them simply state the court's conclusion without an analysis of why the alternative remedy is adequate. See *Walsh v. Consolidated Freightways, Inc.*, 563 P.2d 1205, 1208 ("We feel that existing remedies are adequate.") Furthermore, two of Willamette's cases, *List v. Anchor Paint Mfg. Co.*, 910 P.2d 1011, 1014 (Okla. 1996) (finding that the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* [1994], precludes retaliatory discharge claim), and *Wehr v. Burroughs Corp.*, 438 F. Supp. 1052 (E.D. Pa. 1977) ("[T]he legislature would have provided additional relief in the [Human Rights] statute if it thought it necessary.") evaluate the adequacy of statutory schemes other than OSHA. *List* and *Wehr* are not controlling of the ultimate question here, whether OSHA, in particular, provides an adequate alternative remedy. Because of the *Coleman* rule that an alternative remedy must be adequate, whether a statute other than OSHA is adequate is irrelevant here. The question is whether OSHA's remedy is adequate.

### The Sub-issues

We now examine whether *Coleman* extends to situations other than collective bargaining agreements. The parties have skirted this inquiry by focusing on *Polson* and other federal cases, in which the interrelation of state law and usually federal statutory schemes was directly presented. *Coleman's* reasoning is a dominant influence in answering the certified question. Although *Coleman* arose in the collective bargaining context, we extend its ruling to employees

protected by statutory schemes such as OSHA. In *Coleman,* we said: "Our recognition of such causes of action is limited to wrongful discharge in violation of state public policy clearly declared by the legislature or by the courts." 242 Kan. 804, Syl. ¶ 4. Applicability of the *Coleman* rule here, therefore, depends on whether whistle-blowing is protected by a clearly declared public policy. It is. *Palmer* held: "It is declared the public policy of the State of Kansas to encourage citizens to report infractions of the law pertaining to public health, safety, and the general welfare." 242 Kan. 893, Syl. ¶ 1.

Having extended *Coleman's* shadow beyond the facts of collective bargaining, we next ask: Is the remedy in OSHA § 11(c) [29 U.S.C. § 660(c)] "adequate"? We conclude it is not.

OSHA § 11(c) states:

> "(1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

> "(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district court shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." 29 U.S.C. § 660(c)(1) and (2) (1994).

Willamette cites six cases in which the statutory remedies in OSHA were held to be adequate: *Miles v. Martin Marietta Corp.,* 861 F. Supp. 73 (D. Colo. 1994); *King v. Fox Grocery Co.,* 642 F. Supp. 288, 290 (W.D. Pa. 1986); *Grant v. Butler,* 590 So. 2d 254 (Ala. 1991); *Corbin v. Sinclair Marketing, Inc.,* 684 P.2d 265 (Colo. App. 1984); *Burnham v. Karl & Gelb, P.C.,* 1997 WL 133399 *5-6 (Conn. Super. Ct. 1997); *Walsh v. Consolidated Freightways,*

278 Or. 347, 563 P.2d 1205 (1977). None of the six cases focuses on a *Coleman*-style search for an adequate alternative remedy.

Willamette acknowledges four cases from New Jersey and California support Flenker's position that OSHA's remedies should not preclude a state common-law claim for retaliatory discharge: *Jenkins v. Family Health Program*, 214 Cal. App. 3d 440, 262 Cal. Rptr. 798 (1989); *Hentzel v. Singer Co.*, 138 Cal. App. 3d 290, 188 Cal. Rptr. 159 (1982); *Cerrachio v. Alden Leeds, Inc.*, 223 N.J. Super. 435, 538 A.2d 1292 (1988); and *Lepore v. National Tool and Mfg. Co.*, 224 N.J. Super. 463, 540 A.2d 1296 (1988).

The Ohio Supreme Court has also permitted a common-law tort retaliatory discharge claim in an OSHA setting. *Kulch v. Structural Fibers, Inc.*, 78 Ohio St. 3d 134, 677 N.E.2d 308 (1997). *Kulch* held that "an at-will employee who is discharged or disciplined for filing a complaint with OSHA concerning matters of health and safety in the workplace is entitled to maintain a common-law tort action against the employer for wrongful discharge/discipline in violation of public policy." 78 Ohio St. 3d at 162.

The Missouri Court of Appeals in *Shawcross v. Pyro Products, Inc.*, 916 S.W.2d 342 (1995), a retaliatory discharge preemption case, has analyzed the inadequacy of OSHA's remedy:

"OSHA only allows an employee to file a complaint with the Secretary of Labor who then decides whether to bring an action on the employee's behalf. 29 U.S.C. § 660(c)(2) (1985). The employee's right to relief is even further restricted in that the complaint must be filed within thirty days of the discrimination or discharge. Id. The decision to assert a cause of action is in the sole discretion of the Secretary of Labor and the statute affords the employee no appeal if the Secretary declines to file suit. Id. It is obvious from the language of the two statutes that although an employee may obtain any type of relief possible under FLSA [Fair Labor Standards Act] through the employee's own actions, the relief available under OSHA is limited to what the Secretary of Labor deems appropriate. It should also be noted that unless an employee acts immediately and files a complaint with the Secretary of Labor, there is no remedy available without the public policy exception." 916 S.W.2d at 345.

Because of *Coleman's* specific requirement that an alternative remedy be "adequate," we examine OSHA § 11 (c) in detail. The remedy under § 11(c), as *Shawcross* observes, is the right to file a complaint with the Secretary of Labor. Willamette overstates what

happens next. *Willamette* suggests that upon receiving the complaint, "the Secretary is directed to investigate the complaint," and if the Secretary finds a violation, the Secretary "shall bring an action in any appropriate district court" to recover "all appropriate relief." *Willamette* cites cases that hold that "all appropriate relief" in the statute includes punitive damages, *e.g., Reich v. Skyline Terrace, Inc.,* 977 F. Supp. 1141 (N.D. Okla. 1997), and that the "federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 71, 117 L. Ed. 2d 208, 112 S. Ct. 1028 (1992).

*Willamette* neglects to point out clearly that OSHA § 11(c) says that the Secretary "shall cause such investigation to be made *as he deems appropriate,*" and *"[i]f upon such investigation, the Secretary determines that the provisions of this subsection have been violated,* he shall bring an action." (Emphasis added.) As the certification order notes no guidance is given "as to what factors the Secretary must or may consider to constitute an investigation." Flenker correctly comments that the Secretary's discretion is a significant limitation on the employee's right of redress. What would, in a common-law tort action, be the decision of the plaintiff and plaintiff's counsel is, under § 11(c), the decision of a government employee. The concerns of the government employee could range from budget constraints to political pressure. In addition the limitation period for filing an OSHA § 11(c) complaint is 30 days from discharge.

The Tenth Circuit in its certification order remarked: "This remedy [section 11(c)] has been recognized as a 'limited' one, providing only for administrative proceedings and suit in federal court which may be brought by the Secretary if the Secretary so elects. *Holmes v. Schneider Power Corp.,* 628 F. Supp. 937, 939 (W.D. Pa.), aff'd 806 F.2d 252 (3d. Cir. 1986)." We agree.

The facts here illustrate the type of agency ruling for which the employee cannot receive redress. The certification order says that after Flenker filed his complaint with OSHA, "Mr. Flenker was informed, presumably by an OSHA employee, that because he had fixed the machine in question, which had been a part of his section

11(c) claim, he no longer had a claim under OSHA." Section 11(c) (1) declares discharge in retaliation for filing a complaint to be a violation of OSHA. Fixing the defective equipment in question does not cancel the wrong of retaliatory discharge. The OSHA statute, however, does not appear to provide a second chance for Flenker to try to convince the agency to see things his way.

The inadequacy of the OSHA remedy is not outweighed by the factors cited by Willamette. Willamette suggests that under OSHA (1) there is a lower burden of proof, (2) the Secretary of Labor has considerable resources and expertise in investigating the complaint, (3) the available federal discovery process is for gathering evidence for use at trial, and (4) the employee has the Secretary's experienced representation at trial without cost to the employee. If the complaint is only half-heartedly investigated, or a suit is not filed by the Secretary of Labor, the OSHA factors do not benefit the discharged employee at all.

In evaluating the collective bargaining remedy we held to be inadequate in *Coleman*, we noted: "The factfinding process in arbitration does not equate with judicial factfinding. Rules of evidence do not usually apply; the rights and procedures common to civil trials such as discovery, compulsory process, cross-examination, and testimony under oath are often severely limited or unavailable." 242 Kan. at 814 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 56-57, 39 L. Ed. 2d 147, 94 S. Ct. 1011 [1974]). The same observation can be made about the investigation that the Secretary of Labor is directed to make under OSHA § 11(c).

We noted in *Coleman* that the decision to enter a collective bargaining agreement is made by majority vote. Such agreements are not designed to protect individual workers, but to balance the individual against the collective interest. We said:

"The potential result of a union's emphasis on the collective good is that, in some cases, the employee may be left without a remedy for an employer's violation of state public policy. Here, Coleman's union has decided for the good of the union not to support Coleman's claim by arbitration. If there is no independent state action for retaliatory discharge, and no avenue for Coleman to pursue her state public policy right against her employer, Coleman is limited to proceeding against her representative, the union, in federal or state court under . . . the

[Labor Management Relations Act] for her union's breach of its duty of fair representation." 242 Kan. at 814-15.

Similarly, under OSHA § 11(c), the decision to pursue an employee's claim of retaliatory discharge is made by an administrative agency. Unless there is some kind of administrative appeal of OSHA's decision not to pursue the complaint, which neither party has suggested exists, an employee is limited to voting against an incumbent legislator or against the current administration. A ballot box exercise provides less recourse than a suit against one's labor union in federal or state court, which we found inadequate in *Coleman.* 242 Kan. at 814-15.

### Other Federal Statutory Remedies

It is instructive to compare OSHA § 11(c) to other federal statutory remedies. Under the Energy Reorganization Act (ERA), if "the complainant has made a prima facie showing," 42 U.S.C. § 5851(b)(3)(A), "[u]pon receipt of a complaint . . the Secretary *shall* conduct an investigation [without OSHA's 'as he deems appropriate' language] of the violation alleged." (Emphasis added.) § 5851(b)(2)(A). If the ERA investigation reveals the complaint has merit and after a public hearing, the Secretary shall order preliminary relief and may order compensatory relief after a final order is entered. 42 U.S.C. § 5851(b)(2)(A) and (B). Further, an employee is given the right to file suit in federal court to require compliance with such an order. 42 U.S.C. § 5851(e).

Under the adequate alternative remedy test, the administrative remedy provided by OSHA § 11(c) is less adequate than the remedy under the ERA. Although OSHA entitles an employee to file a complaint under § 11(c), there is no provision for an employee to bring a private action in federal court.

We next turn to examine the employment discrimination provisions of the Civil Rights Act. 42 U.S.C. § 2000a *et seq.* (1994). Title VII provides in part:

"Whenever a charge is filed . . . alleging that an employer . . . has engaged in an unlawful employment practice, the [Equal Employment Opportunity] Commission shall serve a notice of the charge . . . and shall make an investigation thereof." 42 U.S.C. § 2000e-5(b) (1994).

"The person . . . aggrieved shall have the right to intervene in a civil action brought by the Commission. . . . If a charge filed with the Commission . . . is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . the Commission . . . shall so notify the person aggrieved and within 90 days . . . a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved." 42 U.S.C. § 2000e-5(f)(1).

Under Title VII, the aggrieved person is not left without a remedy if the administrative agency does not pursue the complaint; the complainant is given permission to sue. Also, there is no agency discretion language in the Title VII provision providing for agency investigation. The employee's remedy is more effective under Title VII than it is under OSHA.

*Polson* was correct in surmising the Kansas rule to be that an adequate alternative remedy precludes a common-law retaliatory discharge action. However, neither the *Polson* facts nor KAAD is before us here. This is an OSHA case. We are not reviewing *Polson's* conclusion that we would find that KAAD provided an "adequate and exclusive state remedy for violations of the public policy enunciated therein." 895 F.2d at 706.

*Coleman*, while never specifically saying so, assumes that an adequate alternative remedy would preclude a common-law cause of action for retaliatory discharge. The cases overruled by *Coleman* (*Cox, Smith,* and *Armstrong*) make the same assumption.

In *Cox*, we said: "An employee is *adequately protected* contractually from retaliatory discharge." (Emphasis added.) 240 Kan. at 99. In *Smith* we said, "In *Cox*, we declined to extend the tort of retaliatory discharge . . . [citation omitted] to include an employee *adequately protected* contractually from such discharge by a collective bargaining agreement." (Emphasis added.) 240 Kan. at 572. In *Armstrong*, we held that the decision in *Cox* controlled, and plaintiffs who are *"fully covered and protected* by a collective bargaining agreement" are barred from bringing an action in tort for a retaliatory discharge. (Emphasis added.) 242 Kan. at 168.

The *Coleman* majority found the arguments in the *Cox* and *Armstrong* dissents persuasive, and, applying the adequate alter-

native remedy test, held that *Cox* "did not fully recognize the limited remedy afforded the injured employee through collective bargaining." 242 Kan. at 813. Thus, *Coleman* overruled *Cox, Smith,* and *Armstrong* on the ground that the overruled cases wrongly found the remedy under the collective bargaining agreements to be adequate, not on the ground that "adequacy" was not the test. *Coleman, Cox, Smith,* and *Armstrong* apply the same "adequate remedy" test.

We answer the certified question in the negative, on the ground that OSHA § 11(c) (29 U.S.C. § 660[c]) does not provide an adequate alternative remedy under the facts certified here.