IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,425

KEITH LUMRY,
*Appellant*,

v.

STATE OF KANSAS, KANSAS BUREAU OF INVESTIGATION, CLINT HAWKINS, KELLY RALSTON, and ROBERT BLECHA,
*Appellees.*

SYLLABUS BY THE COURT

1.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences that may be reasonably drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, an appellate court applies these same rules, and when it determines reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.

2.

Before an appellee may present adverse rulings to the appellate court it must file a cross-appeal. If the appellee does not, the rulings are not properly before the appellate court and may not be considered.

1

3.

　　To establish a prima facie claim of retaliation to survive summary judgment under 29 U.S.C. § 215(a)(3) (2012) of the federal Fair Labor Standards Act, evidence must be provided from which a jury could conclude that: (a) the employee engaged in a protected activity; (b) the employee suffered an adverse employment action; and (c) a causal connection exists between the protected activity and the adverse employment action. A protected activity may include the making of an oral complaint, but the objection must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.

4.

　　Kansas law will recognize an action in tort based on an employer's retaliatory discharge of an employee for the employee's exercise of rights under the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (2012), unless there is a substitute remedy available under the statute that is adequate.

5.

　　When an appellate court raises a new issue *sua sponte*, counsel for all parties should be afforded a fair opportunity to brief the new issue and to present their positions to the appellate court before the issue is finally determined.

　　Review of the judgment of the Court of Appeals in 49 Kan. App. 2d 276, 307 P.3d 232 (2013). Appeal from Shawnee District Court; LARRY D. HENDRICKS, judge. Opinion filed December 16, 2016. Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is reversed on the issues subject to our review, and the case is remanded with directions.

*Alan V. Johnson*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Topeka, argued the cause and was on the briefs for appellant.

*David R. Cooper*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause, and *Teresa L. Watson*, of the same firm, was with him on the briefs for appellees.

*Per Curiam*:  To comply with wage and hour law, the Kansas Bureau of Investigation's official overtime policy requires monetary compensation at one-and-a-half times the normal hourly rate for hours worked in excess of 80 hours in a two-week period, or one-and-a-half hours of compensatory time for every overtime hour. But Keith Lumry, a former KBI agent, alleges the bureau illegally pressured personnel to work overtime without claiming it, *i.e.*, off the clock and without pay. He claims he was fired in retaliation for complaining about this. The district court granted defendants summary judgment. A divided Court of Appeals affirmed, although the majority's reasoning differed from the district court's. One panel member dissented, in part, and would have remanded some of the claims for trial. *Lumry v. State*, 49 Kan. App. 2d 276, 307 P.3d 232 (2013). Both sides seek our review.

The parties ask:  (1) Whether KBI Director Robert Blecha is an "employer" who can be individually liable for retaliation under the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (2012); (2) whether Lumry's statement to a supervisor that he would not continue shorting his overtime and pay gave the KBI sufficient notice that he was asserting protected FLSA rights; (3) whether Kansas law recognizes retaliatory discharge as a common-law tort when an employee is fired for invoking rights under either the FLSA or its state counterpart, the Kansas Minimum Wage and Maximum Hours Law (KMWMHL), K.S.A. 44-1201 *et seq.*; and (4) whether the panel majority erred in concluding *sua sponte* that Lumry failed to affirmatively establish why his FLSA claim against Blecha was not an adequate alternative remedy to his common-law retaliatory discharge claim against the KBI.

3

We reverse the panel majority, vacate the district court's judgment on those issues subject to our review, and remand for further proceedings. More specifically, we hold defendants' failure to cross-appeal from the district court's decision regarding Blecha's "employer" status under the FLSA deprived the Court of Appeals of jurisdiction to reach that issue, so we dismiss the cross-petition for review as to that question. We further hold Lumry's complaint about unpaid overtime was sufficient to preclude summary judgment as to whether he engaged in a protected activity. We agree with the panel that Kansas law recognizes retaliatory discharge as a common-law tort when an employee is fired for invoking rights under either the FLSA or the KMWMHL. And, finally, we hold the panel majority erred addressing *sua sponte* the adequate alternative remedy question. We remand to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Due to the procedural posture, all facts and inferences that may be reasonably drawn from the evidence are resolved in Lumry's favor because the district court decided this case against him on summary judgment. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1204, 308 P.3d 1238 (2013); *O'Brien v. Leegin Creative Leather Products, Inc*., 294 Kan. 318, 330, 277 P.3d 1062 (2012). Our factual statement is prepared with that recognition.

Lumry began working for the KBI as a special agent in 2001. In late 2006, the KBI promoted him to a senior special agent. Kelly Ralston was his direct supervisor until January 2008, when Clint Hawkins took over that role because Lumry joined a newly formed Southwest Kansas Drug Task Force. Blecha was KBI director at all times relevant.

4

The KBI policy in effect when Lumry was an agent stated "timesheets will accurately reflect time worked, leave taken and earning codes charged." It further provided that "[e]mployees are responsible for continually monitoring the accuracy of the information on the payroll 'stub,' including compensation, accrued leave balances, deductions, and leave accrual rates."

Lumry alleges he regularly worked overtime without claiming all of it on his timesheets. According to him, this was KBI practice and was routinely expected of him and other personnel. As he explained his experience, every two or three months he would "negotiate" with Ralston how much overtime to claim on his timesheets. Hawkins testified it was common for agents to work overtime.

In October 2007, prior to joining the drug task force, a frustrated Lumry had a "tense" conversation with Hawkins regarding uncompensated overtime during which Lumry says he refused to keep underreporting his hours. Lumry told Hawkins, "I'll work an extra 5 hours a week and give you that extra time; but I'm not going to work 10 and 20 hours a week anymore, or more, of unclaimed overtime." Hawkins replied that was just what Lumry would have to do.

The following February, Hawkins reviewed Lumry's timesheets after being surprised when Lumry mentioned he was already accruing overtime during a particular pay period. Hawkins compared Lumry's timesheets to those of other agents and concluded Lumry was posting time when others were not present or claiming time. He said he believed Lumry was reporting time he had not worked because Lumry had recorded time when Hawkins knew Lumry was not present where his timesheets reflected. Hawkins particularly focused on the week of February 11, 2008, when Lumry listed hours for a case no longer being worked by the bureau but did not mention this work in a contemporaneous log Hawkins had requested of Lumry's activities that week.

Hawkins notified Ralston, who moved the concern up the chain of command. Blecha ordered an internal investigation that was conducted by Special Agent in Charge Randy Ewy, who confirmed some discrepancies. Ewy agreed Lumry had overstated hours worked, but also noted Lumry's explanation that Lumry often worked more than he charged the agency, thereby "shaving" hours from his timesheets for the KBI's benefit. Ewy did not conclude whether the errors were deliberate falsehoods or just mistakes.

In May 2008, Blecha put Lumry on administrative leave. Blecha later testified he took the issue seriously because law enforcement officers who falsify documents would have no credibility in future court proceedings. Two weeks later, Blecha proposed firing Lumry, claiming Lumry "knowingly and willfully" falsified timesheets. An administrative appeal ensued, but Blecha confirmed the termination.

Lumry complained to the U.S. Department of Labor about uncompensated overtime. The agency investigated and ordered the KBI to pay Lumry $20,715 for unpaid wages and further determined the bureau owed back pay to other KBI employees, including four agents. The KBI complied with the department's findings. The other KBI employees were not subjected to adverse job actions for submitting inaccurate timesheets.

Lumry also filed suit in the United States District Court for the District of Kansas against the State of Kansas, the KBI, and Ralston in his individual capacity for violations of Lumry's rights under the FLSA and the First Amendment to the United States Constitution under 42 U.S.C. § 1983 (2012). But the federal court dismissed all counts. It held subject matter jurisdiction was lacking over the claims against the State and KBI due to Eleventh Amendment immunity and that the 42 U.S.C. § 1983 claims were not against "a state official in his official capacity" as required under that statute. The court further held Lumry failed to state a 42 U.S.C. § 1983 claim against Ralston because he did not

allege Ralston participated personally in the alleged unconstitutional acts underlying the claim.

While the federal case was pending, Lumry filed the current lawsuit in Shawnee County District Court, naming as defendants the KBI and, in their individual capacities, Hawkins, Ralston, and Blecha. Lumry alleged one count of retaliatory discharge under the FLSA for his complaints about working uncompensated overtime and another count of retaliatory discharge in violation of the First Amendment under 42 U.S.C. § 1983. The petition was later amended to limit the First Amendment claims to the individual defendants, while adding a claim against the KBI for retaliatory discharge in violation of the KMWMHL.

*The state district court proceedings*

Following discovery, but before entering a final pretrial order, the district court granted defendants summary judgment. As to the FLSA, the court held that sovereign immunity barred the claim against the KBI. It further held the allegations against Ralston and Hawkins failed because neither was an "employer" for FLSA purposes. See 29 U.S.C. § 203(d) (2012) (defining "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ."). And while the court agreed Blecha was an employer for FLSA purposes as bureau director, it ultimately rejected the claim against him because it believed Lumry's refusal to work no more than five hours of uncompensated overtime would not have put a reasonable employer on notice that he was asserting protected FLSA rights.

Regarding Lumry's First-Amendment-based allegations under 42 U.S.C. § 1983, the district court held that collateral estoppel barred the claim against Ralston because the federal court had previously dismissed it. The court also held the claims against Blecha

and Hawkins failed because Lumry's speech was part of his official duties as a KBI agent, so it was not protected under the First Amendment.

Shifting to the state law claim, the district court held that Lumry could not assert common-law retaliatory discharge because Lumry's termination did not undermine the public policy protected by the KMWMHL. In the district court's view, the KMWMHL exempted employers covered by the FLSA, so the state law's public policy was not implicated because the KBI was subject only to the FLSA. Lumry timely appealed.

*The Court of Appeals proceedings*

Lumry challenged only some of the district court's adverse rulings. He argued generally the case should have gone to a jury because reasonable minds could differ as to the conclusions to be drawn from the evidence. He specifically asserted: (1) Ralston and Hawkins were "employer[s]" under the FLSA; (2) a reasonable employer would have understood his oral protest to Ralston about unpaid overtime was an assertion of his FLSA rights; and (3) the KMWMHL's public policy supported his common-law retaliatory discharge claim.

Blecha did not cross-appeal the district court's ruling that he, unlike his codefendants, was Lumry's "employer" for FLSA purposes. Instead, he later argued caselaw supporting the district court's holding in favor of Ralston and Hawkins was "an additional alternative basis" for affirming the district court's ultimate decision in Blecha's favor on the FLSA claim.

The Court of Appeals affirmed, although its reasoning differed in part with the district court's. As to the FLSA, the panel unanimously agreed the basis for deciding whether a person is an "employer" under the act is the "economic reality" test articulated

8

in *Baker v. Flint Engineering & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). And after weighing the factors applicable to that test, the panel held that Ralston and Hawkins were not Lumry's "employer[s]" under the totality of circumstances. See *Lumry*, 49 Kan. App. 2d at 287-88.

Under a separate heading, the panel agreed with the district court that Blecha was Lumry's employer under the *Baker* test. Noting Blecha's "corporate role" at the KBI, his authority to act in the KBI's interests, and his status as the only person with authority to impose administrative leave upon and terminate Lumry, the panel held: "[T]he *Baker* economic reality test weighs in favor of finding that Director Blecha is an employer who a jury could potentially find individually liable under the FLSA, and the district court did not err in so finding." 49 Kan. App. 2d at 288. The panel did not address whether it had jurisdiction to consider the district court's ruling since Blecha did not cross-appeal the district court's contrary holding. See K.S.A. 60-2103(h).

The panel members split on whether Lumry's protest about working so much unpaid overtime put the KBI on notice that he was asserting FLSA rights and whether reasonable minds could differ on that question. The majority reasoned that a protected statement must be sufficiently clear and detailed for a reasonable employer to understand what was said to be an assertion of FLSA rights and a call for protection of those rights. 49 Kan. App. 2d at 290. The majority concluded Lumry's statement did not meet that standard, characterizing it as equivocal because he expressed a willingness to continue working at least some uncompensated overtime. 49 Kan. App. 2d at 292. Judge Melissa Standridge dissented, arguing Lumry's protest was a protected activity under the FLSA and that a jury should resolve whether it would have provided a reasonable employer with fair notice that Lumry was invoking FLSA rights. 49 Kan. App. 2d at 303.

9

The panel also divided on the common-law retaliatory discharge claim. The majority held the district court properly granted summary judgment for two reasons. First, the majority could not "conclude, on the present showing, that Kansas recognizes a common-law tort for retaliatory discharge in violation of the FLSA." 49 Kan. App. 2d at 301. The majority cited the lack of Kansas Supreme Court precedent on whether FLSA provides an adequate alternative remedy to the common-law claim, and Lumry's failure to argue on appeal that his FLSA retaliation claim against Blecha was not an adequate alternative remedy. 49 Kan. App. 2d at 300-01. Second, the majority decided that even if Kansas recognized such a claim, Lumry failed to make out a prima facie case because his protest about uncompensated overtime did not explicitly invoke FLSA protections and failed to put the KBI on notice he was invoking the protections. See 49 Kan. App. 2d at 302. Judge Standridge again dissented, arguing Lumry did not bear the burden imposed on him by the majority. 49 Kan. App. 2d at 307.

From this result, both sides sought review, but only as to some of the panel's holdings. Lumry advances two challenges. First, he contends his refusal to conform to the bureau's allegedly illegal wage and hour practices gave sufficient notice he was asserting protected FLSA rights. Second, he argues the panel majority erred in holding that his common-law claim failed because he had not met his burden to demonstrate the remedies available to him under FLSA were not an adequate alternative to a common-law remedy. In their cross-petition, defendants seek review of two of the panel's unanimous determinations. First, defendants argue the panel erred by holding that Blecha was an "employer" under the FLSA. Second, they contend Kansas law does not recognize retaliatory discharge as a tort when an employee is fired for invoking rights under either the FLSA or its state counterpart, the KMWMHL, K.S.A. 44-1201 *et seq.*

We address these four issues in the following order: (1) whether Blecha is an FLSA "employer"; (2) whether Lumry's protest put the KBI on notice that he was

10

asserting protected FLSA rights; (3) whether Kansas law recognizes retaliatory discharge as a tort when an employee is fired for invoking rights under the FLSA or its state counterpart, the KMWMHL; and (4) whether the panel majority erred in concluding *sua sponte* that Lumry failed to affirmatively establish that his FLSA claim against Blecha was an inadequate alternative remedy to a common-law retaliatory discharge claim against the KBI.

## STANDARD OF REVIEW

Our standard of review when addressing issues arising from a district court's grant of summary of judgment is well known:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]'" *Thoroughbred*, 297 Kan. at 1204.

## BLECHA'S "EMPLOYER" STATUS

This court may review all issues properly before the Court of Appeals. See Supreme Court Rule 8.03(h)(1) (2015 Kan. Ct. R. Annot. 78). But defendants' failure to cross-appeal the district court's adverse ruling that Blecha was Lumry's "employer"

11

suggests a jurisdictional bar on appeal. We issued a show-cause order whether an appellate court has jurisdiction to reach this issue.

After reviewing the parties' responses, we conclude the district court's ruling cannot be disturbed now because defendants failed to cross-appeal as required by statute. See K.S.A. 2015 Supp. 60-2103(h) (providing appellee who desires review of "rulings and decisions of which such appellee complains" must give notice of cross-appeal within 21 days after notice of appeal); *Cooke v. Gillespie*, 285 Kan. 748, 755, 176 P.3d 144 (2008) ("[B]efore an appellee may present adverse rulings to the appellate court it must file a cross-appeal. If the appellee does not, we have held that the issue is not properly before the court and may not be considered."); *State v. Novotny*, 297 Kan. 1174, 307 P.3d 1278 (2013) (holding appellee abandoned alternative grounds for affirming district court's ultimately favorable ruling on suppression of evidence when it failed to cross-appeal district court's adverse ruling on the alternative grounds).

Defendants offer two arguments why this should not be the case. First, they contend the court may consider the question as an alternative basis for affirming the district court's judgment. This is not persuasive because the district court specifically addressed whether Blecha was Lumry's employer and ruled against the defendants. See *Cooke*, 285 Kan. at 757 (exception to the cross-appeal requirement may exist for "an alternate—and unaddressed, not rejected—rationale for affirming [the district court's] holding . . . ."). In other words, while we have previously considered arguments not addressed by the district court as alternative bases to affirm despite no cross-appeal having been perfected, this is not one of those instances. K.S.A. 2015 Supp. 60-2103(h) specifically addresses the circumstances here.

Second, defendants argue since the panel addressed the issue, its ruling has become the law of the case. This argument is not persuasive either. "[A]ppellate

12

jurisdiction in civil cases is defined by statute . . . ." *Wiechman v. Huddleston*, 304 Kan. 80, 86, 370 P.3d 1194 (2016); *Wasson v. United Dominion Industries*, 266 Kan. 1012, 1018-19, 974 P.2d 578 (1999). Unlike jurisdictional requirements, "'[t]he doctrine of the law of the case is not an inexorable command, or a constitutional requirement, but is, rather, a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so.'" *State v. Collier*, 263 Kan. 629, 631, 952 P.2d 1326 (1998) (quoting 5 Am. Jur. 2d, Appellate Review § 605).

Defendants' failure to pursue a cross-appeal creates a jurisdictional bar preventing us from reviewing the district court's decision regarding Blecha's employer status. Defendants' cross-petition is dismissed as to this issue.

LUMRY'S REFUSAL TO CONTINUE WORKING UNPAID OVERTIME

Lumry challenges the district court and panel majority's holdings that his oral statement to Hawkins refusing to work more than five hours of uncompensated overtime was insufficient to put a reasonable employer on notice he was asserting rights protected by the FLSA. He argues his testimony about what was said was sufficiently clear and detailed to convey his objection to working overtime without pay. If believed by the jury, he maintains, what he said about the KBI's expectations would constitute an FLSA violation, and his refusal to acquiesce to those expectations should be protected from retaliation.

*Standard of review*

There is no factual dispute regarding the content of Lumry's statement. Instead, the question is whether it constituted "fil[ing] any complaint"—an action protected by the

13

FLSA's anti-retaliation provision. See 29 U.S.C. § 215 (2012). To answer this, we review de novo the application of the law to the undisputed facts. *Duarte v. DeBruce Grain, Inc.*, 276 Kan. 598, Syl. ¶ 1, 78 P.3d 428 (2003). And our review is also unlimited to the extent we must interpret the FLSA. *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013).

*Discussion*

Under the FLSA's anti-retaliation provision, an employer may not

"discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]" 29 U.S.C. § 215(a)(3).

See *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 4, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011).

To establish a prima facie claim of retaliation, Lumry was required to provide "evidence from which a jury could conclude that (1) [he] engaged in a protected activity, (2) [he] suffered an adverse employment action, and (3) a causal connection exists between [his] protected activity and the adverse employment action." *Fezard v. United Cerebral Palsy of Cent. Arkansas*, 809 F.3d 1006, 1011 (8th Cir. 2016). The "protected activity" may be "fil[ing] any complaint . . . ." See *Kasten*, 563 U.S. at 7. This may be accomplished by oral statements. 563 U.S. at 14.

But the phrase "filed any complaint" contemplates "some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has

14

been lodged and does, or should, reasonably understand the matter as part of its business concerns." 563 U.S. at 14. Accordingly, "[t]o fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." 563 U.S. at 14.

The parties do not dispute that Lumry's employment was governed by the FLSA, which mandates that certain employees are entitled to overtime pay after exceeding a set number of hours. See 29 U.S.C. § 207 (2012). Lumry testified in his deposition that in October 2007, he had a "fairly tense" telephone conversation with Hawkins in which he said:

> "Clint [Hawkins], I'll work an extra 5 hours a week and give you that extra time; but I'm not going to work 10 and 20 hours a week anymore, or more, of unclaimed overtime. And [Hawkins said,] I quote, that's just what you have to do. And I said—and another quote, 40 hours a week ain't shit. And I said, I'm not working 40 hours a week; I'm working 50 or 60 hours a week. And he said, 50 hours a week still isn't shit. I said, it is when you're not getting paid for the last 10. Again, that's just what you have to do."

The district court ruled Lumry's statement did not adequately assert his FLSA rights. The court relied on *Deeds v. Waddell & Reed Invst. Mgmt. Co.*, 47 Kan. App. 2d 499, 280 P.3d 786 (2012). In that case, Deeds claimed common-law retaliatory discharge under the Kansas Wage Payment Act, K.S.A 44-313 *et seq*. He was compensated initially through a combination of base salary and commissions on sales and ongoing client accounts servicing. The commissions dropped gradually, but after the fourth year, Deeds was to be paid annually a 2.5% "trailer" commission per account (capped at $50,000 per account per year). Waddell & Reed changed the initial commission structure by phasing out the trailer component.

15

Deeds complained on multiple occasions. First, he spoke with his supervisor about the change being retroactive, arguing he should keep his trailer commissions for sales made prior to the announced change. He later protested to his supervisor's supervisor that he did not believe it was right to change his commissions. When he complained further, he was asked what he wanted, and he answered: "'A fair compensation plan or return of those trailer commissions.'" 47 Kan. App. 2d at 501. Deeds was later fired.

The *Deeds* panel adopted the *Kasten* standard. It held that Deeds needed to put his employer on notice that he was asserting his statutorily protected rights to claim retaliatory discharge. 47 Kan. App. 2d at 506-07. The panel then found his statements too equivocal because he said he would be satisfied with a "fair compensation plan," which did not suggest a claim under the statute. *Deeds*, 47 Kan. App. 2d at 506-07. It stated: "Without some clear indication that Deeds was invoking any of the protections provided under the Kansas Wage Payment Act, there can be no claim against the employer for retaliation in response to the employee's exercise of rights under that statute." 47 Kan. App. 2d at 508.

Based on *Deeds*, the district court rejected Lumry's argument that his statements were sufficient to put the KBI on notice. The district court concluded:

> "[Lumry] failed to assert his rights under the FLSA's prohibition on uncompensated
> overtime when he refused to work ten to twenty hours of uncompensated overtime but
> also stated he would work five hours of uncompensated overtime per week. 29 U.S.C.
> 207. Because Lumry's willingness to work some amount of uncompensated overtime is
> contrary to intending to file a FLSA complaint for uncompensated overtime, Lumry's
> statements did not adequately place Hawkins and the KBI on notice that he was asserting
> his rights under the FLSA."

16

The Court of Appeals majority agreed. It found *Deeds* was consistent with federal authority utilizing *Kasten* and similar to Lumry's case. The majority held Lumry's statement was too equivocal to put a reasonable employer on notice that a potential FLSA claim was possible. It stated: "The option to continue working some uncompensated overtime does not suggest a claim under the FLSA." *Lumry*, 49 Kan. App. 2d at 292.

Judge Standridge disagreed, noting "the context . . . within which Lumry made his complaints includes the undisputed fact that working overtime, off the clock, without pay, in violation of the FLSA, was a practice that was both encouraged and expected by the KBI and Lumry's supervisors for over a decade." 49 Kan. App. 2d at 309. She added, "the complaint about unpaid overtime lodged by Lumry here is precisely the type of right protected by the FLSA." 49 Kan. App. 2d at 311. She explained:

"Viewing the evidence in a light most favorable to Lumry, and given the content of the complaint and the context in which it was made, I believe Lumry's stated objections to working unpaid overtime constitute clear and detailed complaints from which a reasonable employer could have understood Lumry was asserting his right to refuse Hawkins' demands that he work 10 to 20 hours per week of overtime without pay. Although the majority makes much of the fact that Lumry may have acquiesced to working a limited amount of overtime without pay, this fact neither detracts from nor negates the undisputed fact that Lumry's objection constituted a clear and detailed complaint from which a reasonable employer could have understood he was asserting his right to refuse Hawkins' demands that he work overtime without pay. Lumry's willingness to work *some* unpaid overtime—which indisputably is still a wage act violation—does not legally nullify the effect of his complaint. By the majority's reasoning, a woman who complains of sexual harassment by telling her male boss, 'You can say whatever crude things you want about my body, but don't you touch me again,' has failed to make a complaint of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a) (2006), because she is willing to accept some improper and prohibited conduct to keep her job. I don't think so.

17

If that woman is then fired, I believe she gets to take her retaliation claim to a jury." 49 Kan. App. 2d at 311-12.

Judge Standridge's dissent is persuasive. Examining Lumry's statement "in light of both content and context" as directed by *Kasten*, it is "sufficiently clear and detailed for a reasonable employer to understand it . . . as an assertion of rights protected by [the FLSA] and a call for their protection . . . ." 563 U.S. at 14.

Taking context first, Lumry testified he regularly accrued but did not claim overtime hours because the bureau expected this of him and its other personnel. He explained that every two or three months he negotiated with Ralston how much overtime he would claim. Under these circumstances, it is understandable Lumry would agree to work some uncompensated overtime since the KBI's culture demanded it. And when Lumry told Hawkins he would only work five unpaid overtime hours, but not 10 or more per week, Hawkins dismissed this grievance by saying, "50 hours a week still isn't shit."

Given the allegedly pervasive nature of the bureau's illegal work practices, as well as Hawkins' flippant attitude towards unpaid overtime, it can be reasonably said that even if Lumry did not explicitly identify his FLSA's rights or demand them to the fullest extent, he was still taking action clearly averse to the KBI's ethos of noncompliance with federal law. His statement fulfills the "the hallmark of protected activity under § 215(a)(3)." *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996); see also *Lasater v. Texas A & M Univ.-Commerce*, 495 Fed. Appx. 458, 461-63 (5th Cir. 2012) (unpublished opinion) (adopting *McKenzie* rule that employee must step outside normal role to make clear employee is taking an adverse position to the employer).

Against the backdrop supplied by this context, the content of Lumry's statement takes on greater clarity than the panel majority concedes. As Judge Standridge observes,

it would seem absurd to insist that employees claim nothing less than the entirety of their rights before their complaints about unlawful overtime practices can no longer form a basis for adverse employment action. This is especially true since the FLSA "relies for enforcement of these standards, not upon 'continuing detailed federal supervision or inspection of payrolls,' but upon 'information and complaints received from employees seeking to vindicate rights claimed to have been denied.'" *Kasten*, 563 U.S. at 11 (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S. Ct. 332, 4 L. Ed. 2d 323 [1960]).

A reasonable employer would have understood Lumry's flat refusal to work more than five hours of overtime per week as an assertion of a protected FLSA right. And it was clearly taken that way by Hawkins. *Kasten* instructs that the word "complaint" should be interpreted to provide broad protection to the employee, while being mindful that the "Act's 'remedial and humanitarian . . . purpose' cautions against 'narrow, grudging' interpretations of its language." 563 U.S. at 13 (quoting *NLRB v. Scrivener*, 405 U.S. 117, 123, 92 S. Ct. 798, 31 L. Ed. 2d 79 [1972], and *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S. Ct. 698, 88 L. Ed. 949 [1944], *superseded by statute on other grounds*, *Integrity Staffing Solutions, Inc., v. Busk*, 574 U.S. ___, 135 S. Ct. 513, 190 L. Ed. 2d 410 [2014]).

The panel majority relied on four federal cases, which are distinguishable. In *Manfield v. Alutiiq Intern. Solutions, Inc.*, 851 F. Supp. 2d 196, 206 (D. Me. 2012), one plaintiff (Manfield) simply called the human resources department to speak about discrepancies in some security officers' timesheets and later sought information on when pay discrepancies would be corrected. He did not voice any opinion about the legality of the conduct at issue, nor did he make any statement or demand that something must change or threaten action.

19

But Lumry did make a demand—the right to compensation for overtime worked. The same distinction is true of *Robillard v. Bd. of County Com'rs of Weld County Colorado,* No. 11-CV-03180-PAB-KMT, 2012 WL 4442822, at *4 (D. Colo. 2012) (unpublished opinion) (holding plaintiff failed to state a claim for FLSA retaliation based on allegedly "'voic[ing] concerns regarding compensation'"), and *Hawks v. Forest River, Inc.*, No. 3:09-CV-532- CAN, 2011 WL 5434241, at *8 (N.D. Ind. 2011) (unpublished opinion) (plaintiff only said she was aware of a gender-based discrepancy in pay but "did not even indicate that the difference . . . was unfair").

In *Courtright v. Board of County Com'rs of Payne County, Okla.*, No. CIV-08-230-D, 2011 WL 2181954 (W.D. Okla. 2011), an employee said he would not attend a training on his day off because he would not get paid for it. The court held this statement by itself was insufficient "to be understood by a reasonable employer as making an overtime wage complaint or otherwise asserting FLSA rights." 2011 WL 2181954, at *11. In contrast, Lumry's complaint was explicitly an overtime wage complaint. Moreover, the context in which Lumry's conversation occurred is different. Courtright did not show his overtime rights had ever been previously violated, much less that the employment situation was both as systemic and pervasive as Lumry alleges. See 2011 WL 2181954, at *1-12. Further, the *Courtright* court found that even if the statements were protected activity, he still could not make a prima facie case of discrimination. 2011 WL 2181954, at *11. The district court in Lumry's case made no such determination, and a subsequent Labor Department decision ordered additional pay for Lumry.

We hold the district court and panel majority erred in ruling as a matter of law that Lumry's refusal to continue shorting his overtime and pay was not a protected activity. And because the lower courts ended their analyses at this point and no other basis for affirming the district court's judgment on the FLSA claim is properly before us, the case must be remanded to the district court for further proceedings. See *McDonnell Douglas*

20

*Corp. v. Green*, 411 U.S. 792, 802-07, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (under three-prong burden shifting framework applicable to employment discrimination cases, employee must establish a prima facie case, burden shifts to employer to offer legitimate reason for the adverse employment action, and burden shifts back to employee to raise fact issue proffered reason is pretext); *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004) (FLSA retaliation claims analyzed under *McDonnell*'s burden shifting framework).

Necessarily, this also means we disagree with the panel majority's related holding that Lumry failed to make out a prima facie case of common-law retaliatory discharge because his statement was insufficient to establish that he "exercised a statutory right recognized as a basis for" such a claim and that "the employer had knowledge of plaintiff's exercise of that right . . . ." *Lumry*, 49 Kan. App. 2d at 302 ("Lumry's complaint regarding working more than 5 hours of uncompensated overtime failed to explicitly invoke the protections of the FLSA, and it failed to put his employer on notice that he was filing such a claim or that he intended to file a claim."). We turn to the other issues related to Lumry's common-law claim.

COMMON-LAW RETALIATORY DISCHARGE

"Kansas historically adheres to the employment-at-will doctrine, which holds that employees and employers may terminate an employment relationship at any time for any reason, unless there is an express or implied contract governing the employment's duration." *Campbell v. Husky Hogs*, 292 Kan. 225, 227, 255 P.3d 1 (2011) (citing *Morriss v. Coleman Co.*, 241 Kan. 501, 510, 738 P.2d 841 [1987]). But there are specific exceptions to this rule; some are statutory, such as terminations based on race, gender, or disability. See K.S.A. 44-1009(a). Others have been recognized through caselaw when an

21

employee is fired in contravention of a recognized state public policy. *Husky Hogs*, 292 Kan. at 227. Lumry's claim invokes a public policy exception.

The district court granted summary judgment against Lumry on his common-law retaliatory discharge claim, reasoning that FLSA-covered employers (like the KBI) are exempt from the KMWMHL, so a common-law claim could not be used to "'create a right to overtime compensation under the KMWMHL that Lumry never had.'" *Lumry*, 49 Kan. App. 2d at 295. The Court of Appeals panel unanimously rejected this because Lumry's claim "is a state common-law tort claim for seeking to exercise his FLSA rights, not his KMWMHL rights." 49 Kan. App. 2d at 300.

The panel framed the question as whether the KMWMHL's exclusion of FLSA-covered employers expressed a legislative intent to exclude those "employers from the reach of any common-law tort claims for retaliatory discharge." 49 Kan. App. 2d at 299. The panel held it did not, concluding Lumry may pursue a public-policy based common-law claim because his case is indistinguishable from *Hysten v. Burlington Northern Santa Fe Ry. Co.*, 277 Kan. 551, 108 P.3d 437 (2004). 49 Kan. App. 2d at 299-300. We agree with the panel.

In *Hysten*, this court recognized a state common-law retaliatory discharge claim for exercising rights protected by the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 *et seq*. (2000), despite the statutory exclusion of FELA claims from its state-law corollary, the Kansas Workers Compensation Act (KWCA). The court rejected the defendant's argument that the KWCA's inapplicability to claims arising under FELA meant the public policy underlying the KWCA would not be furthered by a common-law retaliatory discharge claim based on the plaintiff's assertion of FELA rights. 277 Kan. at 555-56. The court's task, it said, was "to discern the breadth and depth of underlying

22

public policy, not . . . the specific parameters for application of either statute." 277 Kan. at 556.

"[T]he mere fact that the Kansas Workers Compensation Act is designed to govern claims not governed by FELA tells us nothing about the nature of the policy underlying either statute. It tells us only that the Kansas Legislature was careful not to duplicate protections for on-the-job injuries already provided certain Kansas citizens because of their dual status as employees covered by FELA." 277 Kan. at 557.

As such, the court continued:

"Regardless of whether FELA or the Kansas Workers Compensation Act supplies the framework to support an injured worker's pursuit of recovery, the public policy underlying that framework would be undermined if the worker could be fired for the exercise of his or her statutory right. Such a situation effectively releases an employer from the obligation of the statute." 277 Kan. at 556-57.

Ultimately, the court was persuaded that

"Kansas has a 'thoroughly established' public policy supporting injured workers' rights to pursue remedies for their on-the-job injuries and opposing retaliation against them for exercising their rights. It matters not that the vehicle for that exercise is a federal rather than a state statutory provision. The policy is the thing . . . ." 277 Kan. at 561.

Similar to the FLSA's overtime requirements expressed in 29 U.S.C. § 207(a)(1), the KMWMHL states, "[N]o employer shall employ any employee for a workweek longer than forty-six (46) hours, unless such employee receives compensation for employment in excess of 46 hours in a workweek at a rate of not less than one and one-half (1½) times the hourly wage rate at which such employee is regularly employed." K.S.A. 44-1204(a). The KMWMHL prohibits retaliatory acts against an employee who

23

asserts his or her rights under the act, provides a private right of action to employees, and empowers the Secretary of Human Services to pursue a claim on an employee's behalf. See K.S.A. 44-1210(b); K.S.A. 44-1211. The act exempts "the employment of" FLSA-covered employees. K.S.A. 44-1204(c)(1).

Like the Court of Appeals, we hold K.S.A. 44-1204(c)(1) simply expresses the legislature's desire to avoid duplicating wage-and-hour protections for FLSA-covered employees. See *Hysten*, 277 Kan. at 556. The KMWMHL clearly manifests our state's public policy supporting employees' rights to seek redress for wage-and-hour violations, including uncompensated overtime, and "opposing retaliation against them for exercising their rights." *Hysten*, 277 Kan. at 561. The only difference between Lumry's case and *Hysten* is that Lumry based his common-law theory on the public policy underlying state law, rather than federal. But as noted in *Hysten*, the policy is "the thing." 277 Kan. at 561.

This holding brings us to the next step in Lumry's pursuit of a common-law retaliatory discharge claim because public-policy exceptions to the at-will employment doctrine exist only as necessary to protect strongly held state public policy. *Husky Hogs*, 292 Kan. at 230. "Under the alternative remedies doctrine, a state or federal statute could be substituted for a state retaliation claim—if the substituted statute provides an adequate alternative remedy." 292 Kan. at 236; *Hysten*, 277 Kan. at 561; see also *Flenker v. Willamette Industries, Inc*., 266 Kan. 198, 202-03, 967 P.2d 295 (1998). In other words, if a substitute remedy is adequate, it precludes a common-law claim.

And even though there may be other factors to consider when deciding if a substitute remedy is adequate, we have typically looked to whether the statutory and common-law actions were subject to the same procedures, allowed similar levels of claimant control, and made available the same damages. See *Hysten*, 277 Kan. at 561-64.

24

In *Husky Hogs*, we noted the statutory wage claim at issue redressed a different harm from a common-law retaliatory discharge claim. *Husky Hogs*, 292 Kan. at 236.

The panel majority held that Lumry's common-law retaliatory discharge claim ultimately failed because no Kansas Supreme Court precedent addressed whether the FLSA provided an adequate alternative remedy to the common-law claim and Lumry waived the issue on appeal by failing to present any argument about the adequacy (or lack thereof) of any statutory remedies available to him under the FLSA. 49 Kan. App. 2d at 300-01. Judge Standridge dissented again, arguing the burden to show the existence of an adequate alternative remedy was not Lumry's.

Rather, she contended the alternative remedy doctrine raised *sua sponte* by the panel majority is an affirmative defense that must be pursued first by defendants. Failing that, Lumry had no obligation to address it to avoid summary judgment. See 49 Kan. App. 2d at 306. As to the FLSA claim against Blecha that Judge Standridge believed was still viable, she noted an additional determination by the district court was necessary before deciding whether an adequate remedy existed under the FLSA, due to the potential interplay between the Kansas Tort Claim Act's indemnification provisions, K.S.A. 75-6101 *et seq.*, and sovereign immunity. She explained:

> "As the majority notes, the parties did not brief this issue. Given my belief that, as an affirmative defense, it was the defendant's obligation to raise the issue on summary judgment, I find it improper to raise the issue *sua sponte* as the majority has done here and, even if it had been proper, I simply cannot conclude as a matter of law from the summary judgment record before us that the FLSA retaliatory discharge claim against Blecha ultimately would be an adequate alternative remedy for a common-law retaliatory discharge claim against the KBI." 49 Kan. App. 2d at 307.

We must address two questions. First, which party bears the burden to show whether an adequate alternative remedy exists? Second, based on the summary judgment record, is any substitute remedy afforded to Lumry and adequate to the common-law claim against the KBI?

Both parties largely skirt the issue of who bore the burden at this stage of the proceedings. They each cite the same parts of the same two cases: *Hysten* and *Flenker*. But both involved certified questions from the Tenth Circuit seeking guidance on Kansas law, and neither expressly tags one party with the burden of proof. See *Hysten*, 277 Kan. at 551-52; *Flenker*, 266 Kan. at 198. In *Husky Hogs*, we noted it was the district court *sua sponte* that addressed the adequate remedy issue and reversed after concluding we could decide that issue on the record before us. 292 Kan. at 226. This court's other cases similarly do not disclose an answer to this question. And as Judge Standridge noted, an article in the Journal of the Kansas Bar Association lists the adequate alternative remedies as an affirmative defense. See Matula, *Twenty Years After* Murphy v. City of Topeka*: An Overview of Kansas Retaliatory and Public Policy Wrongful Discharge Law*, 72 J.KB.A. 20, 28-29 (Feb. 2003).

In deciding whether the panel appropriately concluded that Lumry effectively forfeited his common-law claim by failing to argue he lacked an adequate alternative remedy in response to defendants' summary judgment motion, we need look only to the summary judgment statute that states: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact *and that the movant is entitled to judgment as a matter of law*." (Emphasis added.) K.S.A. 2015 Supp. 60-256(c)(2); see also Supreme Court Rule 141(a) (2015 Kan. Ct. R. Annot. 242) (motion for summary judgment must be accompanied by memorandum or brief setting out uncontroverted facts relied upon).

"The purpose of a summary judgment motion is not to preserve legal arguments for appeal; rather, it is to eliminate useless trials on undisputed issues of fact. See 6 Moore's Federal Practice ¶ 56.04[1] at 56-60 to 56-61 (2d ed. 1994). . . . [T]he only effect of a non-movant's failure to respond to a motion for summary judgment is that it constitutes an admission by the non-movant that there are no disputed issues of genuine fact warranting a trial; it does not constitute a waiver by the non-moving party of all legal arguments based upon those undisputed facts. *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994); *Glass v. Dachel*, 2 F.3d 733, 739 (7th Cir. 1993)." *Flynn v. Sandahl*, 58 F.3d 283, 288 (7th Cir. 1995).

Moreover, while neither party raised the issue in the trial court, the panel majority raised it *sua sponte*. Then, instead of addressing the issue, the panel majority arbitrarily invoked the waiver rule against Lumry. This was error.

As we have previously cautioned, when "an appellate court raises a new issue *sua sponte*, counsel for all parties should be afforded a fair opportunity to brief the new issue and present their positions to the appellate court before the issue is finally determined." *State v. Puckett*, 230 Kan. 596, 640 P.2d 1198 (1982).

The final question is whether on the summary judgment record we can say an adequate alternative remedy under federal or state law bars Lumry's common-law claim. As we have noted, the FLSA has its own anti-retaliation provision. 29 U.S.C. § 215(a)(3). It also provides for a private right of action to enforce its protections. The law specifies an employer

"shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the

27

preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (2012).

Unlike the Kansas cases previously discussed, Lumry's FLSA rights need not be asserted through an administrative process. He may seek judicial remedies through state and federal courts—as the procedural history of this matter illustrates—giving him control over his lawsuit and the benefit of judicial processes. While the FLSA does not provide for punitive damages, which are available under the common-law claim, it does provide for double damages, costs, and attorney's fees.

As to plaintiff's control over the litigation, there is a caveat. 29 U.S.C. § 216(b) sometimes forecloses this opportunity:

"The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title in which (1) restraint is sought of any further delay in the payment of unpaid minimum wages, or the amount of unpaid overtime compensation, as the case may be, owing to such employee under section 206 or section 207 of this title by an employer liable therefor under the provisions of this subsection or (2) legal or equitable relief is sought as a result of alleged violations of section 215(a)(3) of this title."

But this only occurs if the Secretary acts under 29 U.S.C. § 217 (2012), which grants a U.S. district court jurisdiction for injunctive relief. See 29 U.S.C. § 217. Lumry's administrative complaint was before the U.S. Department of Labor. And although Lumry argues that agency made findings in his favor and that the KBI agreed to comply with the

28

Labor Department's decision, the summary judgment record does not indicate whether Lumry's case will or will not involve a judicial process described under 29 U.S.C. § 217. Therefore, the Labor Department decision may or may not foreclose Lumry's private action.

Moreover, we note federal courts in this jurisdiction have held FLSA remedies are adequate and foreclose common-law retaliation claims under the public policy theory. See *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997) (holding plaintiff's common-law retaliatory discharge claim was precluded by an adequate statutory remedy available under the FLSA); *Scott v. Topeka Performing Arts Center, Inc.*, 69 F. Supp. 2d 1325, 1331 (D. Kan. 1999) ("The FLSA provides the plaintiff Scott with a broad federal remedial statutory scheme to enforce her claim of retaliation for the assertion of rights under the FLSA."); *Conus v. Watson's of Kansas City, Inc.*, No. 11-CV-2149-JAR/KGG, 2011 WL 4348315 *4 (D. Kan. 2011) (unpublished opinion) ("[E]ven if the FLSA does not provide plaintiffs the opportunity to seek punitive damages, it still offers an adequate alternative remedy to the Kansas common law claim for wrongful termination.").

But another aspect of this question looms because Lumry argues sovereign immunity prevents him from suing the KBI under the FLSA. And as the dissent and concurrence note, there may or may not be a sovereign immunity argument available to Blecha. In granting summary judgment in defendants' favor, the district court found sovereign immunity barred the FLSA claim against the KBI, but it did not dispose of all possibilities because it resolved the FLSA claim against Blecha on other grounds.

If on remand the district court rules sovereign immunity does not preclude the claim against Blecha, then it must consider whether FLSA remedies via the claim against Blecha are adequate. The district court has yet to consider these questions.

Given the multiple, hypothetical scenarios we would need to contemplate to determine in this appeal whether the FLSA provides Lumry an adequate alternative remedy we believe these questions are best left to the district court on remand. *Cf. State v. Burnett*, 293 Kan. 840, 850, 270 P.3d 1115 (2012) (declining to address argument that verdict forms failed to protect defendant's right to be free from subsequent prosecution for same offense not ripe for appellate review because defendant's conviction had not been overturned, and he "[e]ssentially . . . [sought] an advisory opinion" as to what might occur "in some future case"); *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 170, 210 P.3d 105 (2009) (noting "to be ripe, issues must have taken shape and be concrete rather than hypothetical and abstract," and requirement "'designed "to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements"'"); *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 892, 179 P.3d 366 (2008) (same).

Judgment of the Court of Appeal is affirmed in part and reversed in part. Judgment of district court is reversed on the issues subject to review and the case is remanded to district court for further proceedings.

NUSS, C.J., and LUCKERT, J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]
REBECCA W. CROTTY, District Judge, assigned.[2]

_____

[1] **REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 108,425 vice Justice Luckert under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2] **REPORTER'S NOTE:** District Judge Crotty was appointed to hear case No. 108,425 vice Justice Nuss under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

***

STEGALL, J., dissenting:  The Eleventh Amendment to the United States Constitution provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." The framers of the Constitution intended for the States to retain the sovereignty they enjoyed prior to ratification, "except as altered by the plan of the Convention or certain constitutional Amendments." *Alden v. Maine*, 527 U.S. 706, 713, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999); see Alexander Hamilton, The Federalist No. 81, p. 529 Modern Library ed. 1969) ("It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent*. This is the general sense, and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every State in the Union.").

With this blueprint, "each State is a sovereign entity in our federal system" and "'"[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without [a State's] consent."'" *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996) (quoting *Hans v. Louisiana*, 134 U.S. 1, 13, 10 S. Ct. 504, 33 L. Ed. 842 [1890]). "The States retain a 'residuary and inviolable sovereignty.'" *Alden*, 527 U.S. at 715 (quoting James Madison, The Federalist No. 39, p. 245 [C. Rossiter ed. 1961]).

Applying this broad concept of immunity, the United States Supreme Court has extended the principle to include protection from suits brought by a State's own citizens. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997) (citing *Hans*, 134 U.S. 1). Sovereign immunity thus "enforce[s] an

important constitutional limitation on the power of federal courts." *Sossamon v. Texas*, 563 U.S. 277, 284, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011). Finally, Eleventh Amendment immunity extends to federal claims brought against states in state court. *Schall v. Wichita State University*, 269 Kan. 456, 463-66, 7 P.3d 1144 (2000) (citing *Alden*, 527 U.S. 706).

However, a "state . . . may choose to waive its immunity in federal court at its pleasure." *Sossamon*, 563 U.S. at 284 (citing *Clark v. Barnard*, 108 U.S. 436, 447-48, 2 S. Ct. 878, 27 L. Ed. 780 [1883]). But that consent must be "'unequivocally expressed'" in the text of the relevant statute. *Sossamon*, 563 U.S. at 284 (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S. Ct. 900, 79 L. Ed. 2d 67 [1984]). Congress can also abrogate Eleventh Amendment immunity via enforcement of the Fourteenth Amendment, but it did not do so with the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (2012). *Martin v. Wood*, 772 F.3d 192, 195, 165 (4th Cir. 2014). The Eleventh Amendment grants the KBI, as an agency of the State of Kansas, sovereign immunity from FLSA claims. The Supreme Court has extended this immunity to state officers acting in their official capacity. *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 609 n.10, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001) (citing *Edelman v. Jordan*, 416 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 [1974]).

"When [a] suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself." *Pennhurst*, 465 U.S. at 101. The Supreme Court has warned that allowing an action to move forward simply because a state official is sued in his or her individual capacity "would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction." *Coeur d'Alene Tribe*, 521 U.S. at 270. "[A] suit nominally against state employees in their

individual capacities that *demonstrably* has the *identical* effect as a suit against the state is, we think, barred. Any other position would be completely unrealistic and would make a mockery of the Supreme Court's heightened sensitivity to state prerogatives." *Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir. 2001).

Given this, the formality of naming Blecha as a defendant in his individual capacity does not by itself resolve the question of sovereign immunity. Rather, as the Fourth Circuit has said, "[r]esolution of this issue requires us to look beyond the form of the complaint and the conclusory allegations . . . to determine who is the 'real, substantial party in interest.'" *Martin*, 772 F.3d at 196 (quoting *Pennhurst*, 465 U.S. at 101); see *Booth v. Maryland*, 112 F.3d 139, 142 (4th Cir. 1997) ("Eleventh Amendment immunity also extends to state officials when they are merely the nominal defendants and 'the state is real, substantial party in interest.'") (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S. Ct. 347, 89 L. Ed. 389 [1945]); *Luder*, 253 F.3d at 1023 ("even when a suit is against a public officer in his or her individual capacity, the court is obliged to consider whether it may really and substantially be against the state").

In order to identify the real, substantial party in interest, federal courts have considered a variety of factors focused on the substance of the claims as stated in the complaint:

"(1) [W]ere the allegedly unlawful actions of the state officials 'tied inextricably to their official duties,' [citation omitted]; (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State, [citation omitted]; (3) would a judgment against the state officials be 'institutional and official in character,' such that it would operate against the State, [citation omitted]; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests, [citation omitted]; and (5) were the state officials' actions *ultra vires,* [citations omitted]." *Martin*, 772 F.3d at 196.

As I consider these factors alongside a careful review of Lumry's claims, it is clear to me that the State is the real party in interest.

Lumry's complaint clearly contemplates that Blecha was acting in his official capacity. Whereas defendants Ralston and Hawkins were sued solely in their individual capacities, Lumry's complaint states that "Mr. Blecha is being sued in his individual or personal capacity, *and in his official capacity*." (Emphasis added.) But Lumry never attempts to distinguish these two claims. If a litigant asserts that certain facts establish a defendant was acting in his or her official capacity, then by force of the claim's own logic, the defendant was not acting in his or her personal capacity under such alleged circumstances.

This conclusion is buttressed by a careful examination of Counts I and IV of Lumry's complaint. Although Lumry makes separate claims against the KBI and Director Blecha in Counts I and IV, I can discern no factual difference between them. In Count I, Lumry alleges that he complained "to his supervisors and then to the Department of Labor regarding unpaid overtime compensation" and that this "was a motivating factor in the disciplinary action taken against him by Defendant KBI, including placing him on administrative leave on May 23, 2008, his subsequent termination on June 24, 2008, and initiating a CPOST investigation after his termination." Count IV alleges that Lumry "complain[ed] to his supervisors" and to "the Department of Labor regarding unpaid overtime compensation," and that these complaints were

> "a motivating factor in the disciplinary action taken against him by Defendants Hawkins, Ralston and Blecha, including making allegations regarding falsification of timesheets, commencing an investigation against Plaintiff, placing him on administrative leave on May 23, 2008, recommending his termination, his subsequent termination on June 24, 2008, and initiating a CPOST investigation after his termination."

34

According to Lumry's statement of facts, Blecha's involvement in the case was entirely official—mostly involving his authority as KBI Director to terminate Lumry's employment.

Even if Blecha had been directly responsible for denying overtime pay, it would have been inextricably tied to his official duties, and the funding would have come from the KBI. See, *e.g.*, *Martin*, 772 F.3d at 196 ("Martin's complaint alleges that [defendants] had authority to authorize overtime pay and refused to do so *and* that, if they had authorized overtime pay, it would have been funded by Eastern State Hospital. The inevitable conclusion follows that [defendants'] actions were 'inextricably tied' to their official duties at the Hospital.").

There is also no evidence that Blecha acted in an ultra vires manner or was attempting to further his own personal interests distinct from the State's. Lumry's complaint never makes such an allegation. See *Lizzi v. Alexander*, 255 F.3d 128, 136 (4th Cir. 2001) ("The complaint made no showing of any ultra vires action taken by any individual employee. And a conclusory allegation that the 'defendants' were motivated by 'spite' and 'ill will' is not enough, standing alone, to maintain an FMLA action against these supervisors in their individual capacities."), *overruled in part on other grounds by Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (2003); *Martin*, 772 F.3d at 196 ("The complaint includes no allegation that, in so acting, [defendants] acted in an *ultra vires* manner or attempted to serve personal interests distinct from the Hospital's interests.").

In my view, the record before us conclusively demonstrates that Lumry's FLSA claim against Blecha purportedly in his individual capacity is in actuality a claim against the State and should be barred by the State's sovereign immunity. I therefore dissent from

the majority's decision to remand this claim back to the district court for further proceedings. I likewise dissent from the majority's discussion of Lumry's common-law claims, not because I necessarily disagree with that discussion, but because judgment on the viability and existence of such claims may turn in part on the final resolution of Blecha's sovereign immunity defense. Because the majority does not fully or finally resolve that issue, I must reserve judgment on the secondary common-law questions.

***

BILES, J., concurring:  I agree with the majority's outcome and its rationale. I write separately in response to the dissent's notion that it would have been appropriate to dispose of this case now on new Eleventh Amendment immunity grounds and its embrace of *Martin v. Wood*, 772 F.3d 192 (4th Cir. 2014), on its way to that result. The dissent offers up a novel Eleventh Amendment immunity test never before used in this state's jurisprudence or even argued by the parties. In my view, a dispositive ruling at this stage on this basis would be a disservice to the litigants and the process they should expect in a Kansas courtroom.

Lumry contends his complaint under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (2012), against Blecha for retaliatory discharge should proceed due to Blecha's statutory status as an "employer" under the FLSA. See 29 U.S.C. § 203(d) (2012). The district court and Court of Appeals agreed Blecha was an "employer" and could be liable under the FLSA. *Lumry v. State*, 49 Kan. App. 2d 276, 288-89, 307 P.3d 232 (2013). But the lower courts held that claim failed for other reasons under the alleged facts because Lumry did not show he "file[d] any complaint," as required to make out a FLSA retaliation claim. See 49 Kan. App. 2d at 290-92. Taking a different tack, the dissent would cut off a review of the lower courts' analysis by addressing *sua sponte*

36

whether Lumry's FLSA claim against Blecha individually is barred by the Eleventh Amendment as a de facto claim against the State.

There are obvious problems with this approach. First, Blecha never argued the claim against him individually was barred by the Eleventh Amendment. The only Eleventh Amendment analysis concerned Lumry's FLSA claim against the KBI, a state agency. And as to that specific defendant, the district court held the State had not waived Eleventh Amendment immunity just because it accepted federal funds to create the Southwest Kansas Drug Task Force. The court also rejected the argument that the *Ex Parte Young* doctrine allowed Lumry to sue the KBI for injunctive relief. See *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908). Those rulings were not appealed, and the subsequent arguments by the parties and holdings by the Court of Appeals make no further mention that the Eleventh Amendment determines any remaining issue in controversy. How, then, does this new defense rise to the surface now? I can find no such claim in any of Blecha's briefing to the Court of Appeals, his response to Lumry's petition for review, his cross-petition for review, or Blecha's supplemental brief to this court.

Moving to the merits, there are additional problems. All sides recognize sovereign immunity bars a suit against a state official when the sovereign is the real, substantial party in interest. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984). But it is also recognized that a suit for money damages still may be prosecuted against a state official in his or her individual capacity for unconstitutional or wrongful conduct fairly attributable to that officer, so long as the relief sought is from the officer personally, and not the state treasury. *Alden v. Maine*, 527 U.S. 706, 757, 119 S. Ct. 2240, 1144 L. Ed. 2d 636 (1999) (illustrating principle that sovereign immunity bars suits against states but not lesser entities). Lumry, of course, makes no claim against the state treasury for Blecha's alleged retaliation.

To bar Lumry from the courthouse, the dissent would adopt the reasoning of *Martin*, in which the court created a rule that "[t]o identify the real, substantial party in interest, we thus examine the substance of the claims stated in the complaint . . . ." 772 F.3d at 196. In doing so, the Fourth Circuit identified four inquiries relevant to that analysis:

"(1) [W]ere the allegedly unlawful actions of the state officials 'tied inextricably to their official duties,' . . . (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State . . . (3) would a judgment against the state officials be 'institutional and official in character,' such that it would operate against the State . . . (4) were the actions of the state officials taken to further personal interests distinct from the State's interests . . . ; and (5) were the state officials' actions ultra vires [Citations omitted.]" 772 F.3d at 196.

The *Martin* court decided the lawsuit it was considering was actually against the State because the complaint alleged supervisors had authority to allow overtime pay and refused to do so, and that such pay, if authorized, would have been funded by the State. The court concluded the supervisors' actions were "inextricably tied" to their official duties. 772 F.3d at 196. And the court further noted the complaint alleged the supervisors acted in the State's interest, and not ultra vires or to serve their personal interests. 772 F.3d at 196.

In my view, *Martin* applies an incorrect legal standard to determine whether a suit against individuals is barred by sovereign immunity. Whether a lawsuit is against the State turns on the effect of the judgment sought, not the official or personal nature of the acts giving rise to liability. See *Pennhurst*, 465 U.S. at 106-07 (rejecting argument that injunctive relief affecting State could be obtained in private suit against state officials if officials' acts were ultra vires under state law). "'The general rule is that a suit is against

38

the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act."'" 465 U.S. at 101 n.11 (quoting *Dugan v. Rank*, 372 U.S. 609, 620, 83 S. Ct. 999, 10 L. Ed. 2d 15 [1963]); see *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 255, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011) (quoting *Pennhurst*, 465 U.S. at 101 n.11). *Martin* cites *Pennhurst* extensively but overlooks the general rule entirely in its "real, substantial party in interest" analysis.

I would suggest the *Martin* factors are of questionable utility in determining whether a lawsuit for money damages against a state official in his individual capacity is, in effect, a suit against the state. First, whether the actions complained of were "tied inextricably to official duties" is language the authority *Martin* cites pulled from thin air. See *Lizzi v. Alexander*, 255 F.3d 128, 136 (4th Cir. 2001). *Lizzi*, in turn, also improperly focused on the nature of the defendants' conduct rather than the effect of the relief sought. See 255 F. 3d at 136 (concluding "State" was real party in interest in FMLA action against agency created by interstate compact and individual supervisors because complaint never stated whether individuals were being sued in official or individual capacity, individual defendants' actions were tied to official duties, and complaint did not show ultra vires action by individuals).

Second, for the factor concerning whether the State would have borne the burden if the officials had authorized the desired relief at the outset, the *Martin* court cites a footnote in *Pennhurst*. See *Martin*, 772 F.3d at 195 (citing *Pennhurst*, 465 U.S. at 109 n.7). Although the *Martin* court purports to cite *Pennhurst* footnote 7, this appears to be a typographical error as footnote 17—unlike footnote 7—contains material relevant to the proposition and appears on the cited page of the *Pennhurst* decision. But footnote 17 is about the effect of injunctive relief, not money damages. See *Pennhurst*, 465 U.S. at 109

n.17. In the footnote, the *Pennhurst* majority commented on the dissent's observation that an official's good faith immunity from damages liability is irrelevant to whether injunctive relief is available:

> "The dissent appears to be confused about our argument here. . . . It is of course true, as the dissent says, that the finding below that petitioners acted in good faith and therefore were immune from damages does not affect whether an injunction might be issued against them by a court possessed of jurisdiction. The point is that the courts below did not have jurisdiction because the relief ordered so plainly ran against the State. No one questions that the petitioners in operating Pennhurst were acting in their official capacity. Nor can it be questioned that the judgments under review commanded action that could be taken by petitioners only in their official capacity—and, of course, *only* if the State provided the necessary funding." *Pennhurst*, 465 U.S. at 109 n.17.

Because the institutional changes ordered in *Pennhurst* could not be implemented by the state official defendants except in their official capacity, and only with state funding, the effect of the judgment was against the State. But the same does not hold true with respect to money judgments against individual officers because they can be satisfied by those individuals. Moreover, the *Pennhurst* footnote focuses on the relief granted, *i.e.*, "the judgments under review." It contains nothing supporting the proposition that a court should examine whether the State would have borne the burden if it authorized the relief at the outset.

Similarly, it is unclear how the factor concerning whether the judgment would be institutional and official in character such that it would operate against the State is meaningful to the analysis required in Lumry's case—when the plaintiff seeks damages from the individual officer for retaliation.

The final *Martin* factor, whether the officials' acts were ultra vires, blends the general rule for determining whether a suit is against the State with an exception to the rule that permits prospective relief in a suit against a state official, despite the fact the relief runs against the State. See *Pennhurst*, 465 U.S. at 102 (under *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 [1908], exception to rule that suit against officer is against sovereign, if decree would operate against sovereign, exists when suit challenges constitutionality of state official's action, but only prospective injunctive relief may be granted in such cases).

Whether Lumry's effort to impose personal liability on Blecha is a suit against the State under the appropriate effect-of-relief standard may reasonably be disputed, and no doubt will be when this case returns to the district court. But just to illustrate my point, let's consider what some of that back and forth might be.

Assuming Blecha is an "employer" subject to personal liability under the FLSA, as the panel unanimously held, the judgment sought would not "expend itself on the public treasury." This is true even though Blecha might be entitled to indemnification from the State for any judgment against him. See *Luder v. Endicott*, 253 F.3d 1020, 1023 (2001) ("The fact that the state chooses to indemnify its employees who are sued in federal court is irrelevant . . . because it is the voluntary choice of the state, not a cost forced on it by the federal court suit."); see also *Hafer v. Melo*, 502 U.S. 21, 31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (holding 42 U.S.C. § 1983 suit for damages against state official in official's individual capacity not barred by Eleventh Amendment "insofar as [plaintiffs] seek damages against [the officer] personally . . ."); *Middleton v. Hartman*, 45 P.3d 721, 729 (Colo. 2002) (en banc) (holding Eleventh Amendment did not bar state-court FLSA action seeking to hold officials personally liable for money damages).

It might also be said that a judgment against Blecha would interfere with public administration. See *Hafer*, 502 U.S. at 31. But in this regard, Lumry's case is distinguishable from those the dissent cites because Lumry is a single plaintiff who alleges a specific officer personally retaliated against him for opposing the KBI's informal overtime practices. See *Martin*, 772 F.3d at 196 (plaintiff alleged state employer failed to pay her overtime because her supervisors failed to approve it and supervisor acted in employer's interests in doing so); *Luder*, 253 F.3d at 1024 (holding FLSA overtime lawsuit by 145 current state employees against supervisors barred by Eleventh Amendment because State would practically be forced to satisfy the judgment and comply with FLSA overtime requirements in future dealings with the employees).

This retaliation, if factually established, is contrary to federal law. And recovery for this wrongful act does not require proof the defendant failed to pay the plaintiff in compliance with the FLSA. See *Blackie v. Maine*, 75 F.3d 716, 722 (1st Cir. 1996). In other words, Lumry's claim would not turn on a judicial finding that the State, as Lumry's employer, violated federal law. *Cf. Luder*, 253 F.3d 1020 (proposing FLSA judgment against supervisor for supervisor's misapplication of state's policy of complying with FLSA would not burden the state because the lawsuit would advance the state's policy). Blecha's liability would not be based on his enforcement of a formal state policy, but on his own actions in reaction to Lumry's complaint about allegedly illegal overtime pay practices.

In addition, whether a judgment might shock the State into future compliance with the FLSA would be a collateral, prospective effect of the judgment. And such effect would not seem to raise an Eleventh Amendment concern when the suit is based upon the officer's violation of federal law. It would be consistent with the *Ex Parte Young* exception's authorization of prospective injunctive relief for state officials' violations of federal law based on the competing goals of "vindicating the supreme authority of federal

42

law" and "preserving to an important degree the States' constitutional immunity." See *Pennhurst*, 465 U.S. at 910-11.

Moreover, just because the State enjoys sovereign immunity barring suits by private individuals to enforce their rights under the FLSA does not mean the State is immune from complying with the FLSA. See *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 100, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000) (Thomas, J., concurring in part and dissenting in part) ("The FLSA's substantive coverage of state employers could be given meaning through enforcement by the Secretary of Labor, which would raise no Eleventh Amendment issue . . . ."). Indeed, the record reveals the KBI already has been forced to comply with the FLSA when the inaccuracies from employees' timesheets came to light.

In short, I am unconvinced *Martin* took the correct path, or that it is the appropriate analytical vehicle for the retaliation claim before us. But even if this unique new test is appropriate, it would remain necessary for the district court to apply it to the disputed facts, while allowing the parties to argue its potential application—not deciding the case *sua sponte* on appeal in this court on that basis.